## A. J. PAXTON *v.* THE VALLEY LAND COMPANY.

1. TAX TITLE. *Purchase from levee board. Green* v. *Gibbs. Subsequent sale to state. Disposition of state's title.*

   Land claimed by the board of levee commissioners under a tax sale made in 1870, after being sold under decree of the chancery court of Hinds county in the case of *Green* v. *Gibbs*, became subject to taxation as other land ; and thereafter (1883) a sale of the same to the state for taxes due conferred a good title, and, after the period for redemption, the state could make such disposition of its title as was deemed proper.

2. SAME. *Quit-claim by state. Acts* 1884, *p.* 182. *Acts* 1888, *p.* 41.

   In case of such subsequent sale to the state a quit-claim deed, executed by the auditor to a purchaser under the above decree, in accordance with the act of March 14, 1884, vested title in such purchaser, regardless of any invalidity, if any, in the original levee-board title. This is true also of a conveyance to a purchaser under said decree, executed in pursuance of the act of March 2, 1888, and a conveyance under this act is *prima facie* evidence of paramount title.

3. SAME. *" Purchaser" under said acts.*

   One deriving title to land through a purchaser under said decree, though having conveyed it to another (with warranty) prior to the passage of the act of 1884, was entitled, on complying with its terms, to a conveyance of the state's title, which would enure to his vendee. This is true also of the act of 1888. *Huntingdon* v. *Grantland*, 33 Miss. 453, cited.

4. CHANCERY COURT. *Jurisdiction. Removal of clouds.*

   The chancery court has jurisdiction of a bill by the real owner of land to cancel a void claim of title by another, though the defendant is in possession. *Wofford* v. *Bailey*, 57 Miss. 239, cited.

FROM the chancery court of Sunflower county.

HON. W. R. TRIGG, Chancellor.

This is an appeal from a decree overruling a demurrer to a bill exhibited by the Valley Land Company, Limited, against the appellant, A. J. Paxton, December 3, 1888, seeking the cancellation of his claim of title to certain wild land in Sunflower county. It is averred that complainant is the real owner of the land, and that the assertion of title by defendant is unjust and injurious to complainant. From the allegations of the bill the following facts

appear : The land was acquired from the United States in 1835. On Wednesday, May 11, 1870, it was sold for the levee taxes due thereon for three years (1867, 1868, and 1869) and was conveyed to the liquidating levee board, according to law. Afterwards, by virtue of the decree of the chancery court of Hinds county in the case of *Green* v. *Gibbs* (54 Miss. 592), it was sold, with a large quantity of other land, to E. C. Gordon, who received a deed therefor from Gwin and Hemingway, commissioners, October 3, 1881. By this sale such title as the levee board held passed to Gordon, and he conveyed the land to Evers, November 25, 1881. Evers conveyed by warranty deed to Burroughs, February 23, 1884. But, meantime, March 6, 1883, the land was duly sold to the state for the unpaid taxes of 1882. On May 26, 1884, after his sale to Burroughs, Evers obtained a quit-claim deed from the state, in pursuance of the act of March 14, 1884 (Acts 1884, p. 182), which act authorized the auditor to execute to any "purchaser or person claiming under said purchaser," by virtue of the above-mentioned decree, a quit-claim where the state claimed the same land for taxes, provided application was made therefor and all taxes paid within twelve months. Burroughs conveyed, with warranty, to George Prentiss, and on June 8, 1887, he conveyed to Mary C. Prentiss, and on the same day she conveyed to the Valley Land Company. On March 2, 1888, an act was passed to quiet the title to the lands sold under said decree in the case of *Green* v. *Gibbs*, and authorizing the auditor to quit claim to purchasers or those claiming through purchasers thereunder, on certain conditions, the state's title where the land was held or claimed by the state for taxes. Acts 1888, p. 41. On August 21, 1888, although he had conveyed away the land, as above, prior to the passage of said act, George Prentiss applied to the auditor and obtained a conveyance of said land to himself in pursuance of the act. Afterwards he executed to the Valley Land Company a quit-claim deed to the land. It is alleged that Burroughs and Prentiss, under their respective purchases, took possession of a large tract of land, of which the land in controversy is a part ; that Paxton had no just or valid claim ; that he has not acquired the "bottom or original title ;"

that he has always refused to pay taxes on the land; that he has "recently erected a frail tenement on the lands at some obscure point," and is unjustly asserting title thereto and is slandering the true title, to the great injury of complainant, the real owner. It is also averred that defendant is barred of all right by the statute of limitations. Prayer: That the claim of defendant be cancelled as a cloud, and that he be enjoined from asserting title to the land or interfering with the possession. Defendant demurred, and, from a decree overruling the demurrer and requiring an answer, he prosecutes this appeal. The other facts deemed necessary to an understanding of the case are stated in the opinion of the court.

In view of the decision of the court, numerous points made by counsel in argument are omitted—the questions not being passed upon.

*Chapman & Paxton,* for appellant.

1. The chancery court has jurisdiction to remove clouds only when the complainant is in possession, or when neither party is in possession. Here the bill shows that the defendant, Paxton, is in possession, and it is therefore submitted that complainant has a full and adequate remedy at law by ejectment. 51 Miss. 789. By § 1833 of the code of 1880, it was never intended to oust the jurisdiction at law in cases where the defendant is in possession, and the chancery court has no jurisdiction where the remedy by action at law is complete.

2. It is alleged that Paxton has slandered the title of complainant. An action at law affords an adequate remedy for this, unless Paxton is insolvent, and it is not alleged that he is.

3. The deed from the auditor to Evers is void. It professes to be made in pursuance of the act of 1884, which empowered the auditor only to make deeds to *purchasers* of liquidating levee land or their *vendees.* Evers was not a claimant or owner of the land, but had conveyed it to Burroughs before the passage of the act.

But if these objections are not good, it is submitted that it was not intended by the act of 1884 to confer a new title. The intention merely was to extend the period of redemption for the benefit

of purchasers under the decree in *Green* v. *Gibbs*. The convey-
ance to Evers, if valid at all, operated only as a redemption, and
gave no new or additional title.

4. The deed from the auditor to Prentiss is also void, because
Prentiss was not an owner or claimant of the land, having pre-
viously parted with all interest in it. Neither under the act of
1884 nor that of 1888 did the real claimants of the land apply to
the auditor for a conveyance within the time limited. The auditor
exceeded his power, and his unauthorized act conferred no right.

5. If it be conceded that the deed of the auditor executed under
the act of 1888 was regular, is the provision that it shall be *prima
facie* evidence of paramount title constitutional? We submit that
it is not. The legislature may declare deeds depending on future
acts *prima facie* valid. But we deny that it may adjudicate past
matters and make anything *prima facie* evidence of title, when in
the nature of things proof of invalidity is impossible; this in effect
would be to declare it conclusive. This new conveyance was not
confined to lands shown by the books to be claimed by the state.
Even in case of such lands, in many instances, as the act declares,
the records of sales were lost or destroyed. So, the tax-payer hav-
ing a perfect title, which is assailed under this act, must go back
indefinitely and show affirmatively that the state or levee board had
*no* title. If he shows tax receipts for thirty years back, it would
be assumed that the land had been previously sold—that is, if the
court holds against us on the plea of the statute of limitations of
ten years. The tax-payer had a perfect defense under the previous
law, and this was a vested right which the act of 1888, takes away.

The decision in *Dingey* v. *Paxton*, 60 Miss. 1038, has stood for
many years, and has become a rule of property. The ruling there
announced should not be changed so as to cut off the tax-payer
entirely and at once. He should be allowed the five years pre-
scribed by the statute from the date of the reversing decision in
which to contest the tax title with its defects uncured.

*Calhoon & Green*, on the same side.

1. The bill avers that defendant claims the legal title and that

complainant's title is paramount; there is a contest for possession. Equity has no jurisdiction to try legal titles. The remedy to remove clouds is not a substitute for the action of ejectment. *Glazier* v. *Bailey*, 47 Miss. 395; *Carlisle* v. *Tindall*, 49 Ib. 229; *Phelps* v. *Harris*, 51 Ib. 789.

2. The deed from the auditor to Evers conferred no title, because he was not the "purchaser" under the decree in *Green* v. *Gibbs*, and was not at the time of the conveyance "claiming under said purchaser." The act of 1884 conferred a *personal* right. Evers had sold the land before the passage of the act, and the auditor had no power to execute a deed to him. *McCulloch* v. *Stone*, 64 Miss. 392.

But the act of 1884 was not intended to confer an independent or additional title, but merely provided for a quit claim—a release, upon payment of the taxes—not a sale. It is in the nature of a redemption. Section 574, code 1880, provides for the same kind of release.

If the quit claim can be the source of title, it is not averred that all taxes were paid as by the act required. It must affirmatively appear that the taxes were paid, the power to execute the deed being conditional upon such payment. *McCulloch* v. *Stone, supra;* Sedgwick, Stat. and Const. L. 117.

3. Prentiss, the alleged grantee of the auditor under the act of 1888, was not a "purchaser of said levee lands from said commissioners," nor was he at the time of the conveyance "holding under such purchaser." He had sold and conveyed the lands prior to the passage of said act. The auditor had no authority to execute the deed to him. This, like the act of 1884, did not contemplate a *sale* by the state. It only provided for a release of the state's title upon condition that all taxes should be paid.

The bill does not aver that all the taxes were paid. Such payment was a condition precedent to the execution of the deed, and it must affirmatively appear that this condition was met, or that the auditor was satisfied by the production of tax receipts that all taxes had been paid. In the absence of an averment that the taxes were

paid, or that none were due, no authority is shown for the auditor to convey.

It appearing on the face of the deed that the title of the levee board was void, the declaration in the act of 1888 that the title shall be *prima facie* valid is ineffectual.

But, if applicable, this act is unconstitutional. It purports, retroactively, to make the decree in said cause evidence against persons not parties to it. This is not "due process of law." *Vaughan* v. *Swayzie*, 56 Miss. 704. A void judgment is without effect. No power can give it vitality. Freeman on Judgments, § 117.

A curative act cannot affect third persons. Freeman on Void Ju. Sales, § 61.

Constitutional prerequisites in tax sales cannot be cured. *Gibbs* v. *Dortch*, 62 Miss. 676.

The act of 1888, long *after* the fact, and in the absence of any legal notice, assessment, or sale, attempts to validate these void levee titles. We submit that is unconstitutional. See *Virden* v. *Bowers*, 55 Miss. 18 ; *Dingey* v. *Paxton*, 60 Ib. 1038 ; Cooley on Taxation, 298–9.

4. The bill shows that the lands were sold to the state for the taxes of 1882, and that Evers received a quit claim from the state after the expiration of the period for redemption. If, as we have attempted to show, Evers was not a person capable of receiving this quit claim under the act of 1884, then the title is still in the state. If this quit claim was valid, the title is in Evers. In either event, the title is outstanding and not in complainant. But the acts of 1884 and 1888 were only intended to apply where the title of the levee board was good and the state merely held a claim. They do not apply where the state had a good title.

*M. Green*, of counsel for appellant, made an oral argument.

*Nugent & McWillie*, for appellee.

1. The validity of complainant's title and the invalidity of that claimed by the defendant appears upon the face of the bill. The court has jurisdiction. *Hart* v. *Bloomfield*, 66 Miss. 100 ; *Handy* v. *Noonan*, 51 Ib. 166 ; *Cook* v. *Friley*, 61 Ib. 1 ; *Wofford* v.

*Bailey,* 57 Ib. 239 ; *White* v. *Flanigan,* 54 Am. Dec. 673 ; 3 Pom. Eq., § 1357.

2. A deed under the act of 1884 passed the title of the state ; but it is not averred in the bill that he purchased under this act. The allegation is that on May 26, 1884, the auditor conveyed the land to him according to law, that is according to the general laws of the state. He paid the taxes, as bill and the deed itself show. But Evers was entitled to the deed under the act of 1884. He had acquired the title of Gordon, who purchased directly under the decree in the case of *Green* v. *Gibbs.* He was one of the parties for whose benefit this act was passed. He had conveyed the lands with covenant of warranty, and he paid all taxes within twelve months after the passage of the act. This purchase enured to the benefit of his vendees.

3. So it was competent for Prentiss to receive the conveyance under the act of 1888. He was a purchaser under the decree therein recited. Though he had parted with the title, he had conveyed with covenant of general warranty. Besides, after receiving the conveyance from the state, he executed a quit-claim deed to appellee. Therefore, in any view, we have the levee board title and the title of the state ; and the act of 1888 makes the auditor's deed thereunder *prima facie* evidence of paramount title.

It was not necessary to aver that we paid all taxes : the auditor's deed is evidence of this. The deed is only *prima facie* evidence of title. The appellant is not estopped from showing that the title is not good.

*W. P. & J. B. Harris,* on the same side.

The act of 1888 does not merge one estate into another. The law of merger has no application to titles related as that of the state and levee board under independent tax sales. 1 Washb. Real Prop. 95.

Nor is there any foundation for the idea that the conveyance by the auditor under that act was intended as a simple release, to operate by way of *extinguishment* of the state's title. The land was subject to sale by the state under general laws, and the deed, though

in form a quit claim, passed the title. The act of 1884 directed the auditor to convey by quit claim. This is not a release. 3 Washb. Real Prop. 309 ; Code 1880, § 1195.

The act of 1888 made it the duty of the auditor, on payment of certain taxes, to " execute a deed conveying the state's title." This was not a redemption, but a sale, so intended in order to give title.

*Frank Johnston*, on the same side.

1. The land went into private ownership in 1881. The taxes of 1882 not being paid, it was sold to the state March 5, 1883. After the period for redemption had expired, the statute of March 14, 1884, was passed, giving purchasers under the decree in *Green* v. *Gibbs* the exclusive right to *purchase* the state's title. The state had the right to give this option. The land was open to purchase under the general laws at the time this act was passed. It belonged to the state, and could be dealt with as it pleased.

2. The deed executed by the auditor, under the act of 1884, was not a mere release. Nor was it a redemption. This idea is excluded by the very terms of the statute which declares that the quit-claim deed shall convey the title of the state. Acts of 1884, p. 182.

There was no merger of titles. A merger is never permitted where any substantial interest of the grantee requires that it shall not take place. There is nothing to indicate that the state intended that its title should be extinguished. On the contrary, the object was to enable purchasers under the decree in *Green* v. *Gibbs* to fortify their title by whatever title the state had.

3. The language of the act of 1888 is more elaborate, but it means the same as the act of 1884. It declares that the deed from the state shall convey the title. It is made *prima facie* evidence of paramount title, and this only prescribes a rule of evidence by changing the burden of proof, which was clearly within the power of the legislature. Cooley on Const. Lim., 452.

*W. P. Harris* and *W. L. Nugent*, of counsel for appellee, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

Granting the invalidity of the sale of the land for taxes, on the 11th of May, 1870, as claimed by the appellant, and that no title passed to the purchaser under the decree in *Green* v. *Gibbs et al.*, it is nevertheless true that, by the conveyance under the decree, the land became the subject of a claim of individual ownership, ceased to be claimed by the board of levee commissioners, belonged either to Paxton or the purchaser under the decree, and, therefore, was subject to sale for taxes on it due and not paid : and, as it was duly sold and conveyed to the state of Mississippi for taxes, on the 5th of March, 1883, it was, after the period for redemption had expired without redemption, subject to such disposition as the state saw proper to make of it. It was then lost to the former owner, held by the state by a paramount title which it could vest in whomsoever it pleased, and was, by "An act for the benefit of purchasers," etc., under said decree, approved March 14, 1884, directed to be conveyed to any purchaser under said decree who should apply for a conveyance of the title of the state within twelve months after the passage of the act. And so determined was the state to vest its title to any of said lands, whensoever acquired, in any purchaser of said levee lands under the said decree, that "An act to quiet and settle the title" to said lands was approved March 2, 1888, directing a conveyance of the state's title to the land held under said decree to any purchaser who should apply for such conveyance ; and a deed by the auditor, in pursuance of this act, was made *prima facie* evidence of paramount title.

A conveyance of the state's title to the land in controversy was made by the auditor of public accounts to Evers on the 26th of May, 1884, according to the statute mentioned ; and on the 21st of August, 1888, the auditor, pursuant to the act approved March 2, 1888, executed to George Prentiss a conveyance of the state's title to said land. The appellee claims the land derivatively by successive conveyances from Evers and Prentiss, and Evers derived title from Gordon, who purchased from the commissioners under said decree. Both Evers and Prentiss were within the contemplation of

the two acts by which the state sought to perfect the title under the decree and sale mentioned.

It is true that Evers had conveyed the land before the passage of the act of March 14, 1884, but he was a purchaser of the lands within the meaning of the act. The fact that he had sold them did not make him any less a purchaser than if he still held them. He had warranted the title, and was bound to protect the title of his vendee, and could avail himself of any remedy of which the vendee could avail himself, in case of a suit to protect the title ; *Huntingdon* v. *Grantland*, 33 Miss. 453 ; and was equally with his vendee entitled to avail himself, for the benefit of his vendee and himself, of the provision of the remedial statute under consideration. The term purchaser, as employed in the statute, embraces all who claim any interest in the lands by conveyance under the decree mentioned. These observations apply to the situation of Prentiss, and the conveyance to him under the act of March 2, 1888. Therefore the bill shows a complete title in the complainant.

The propriety of a resort to equity for a cancellation of the claim of title by the appellee is fully vindicated by *Wofford* v. *Bailey*, 57 Miss. 239.

*Affirmed.*