| 86 | 557 |
|----|-----|
| 90 | 766 |
| 86 | 557 |
| 93 | 489 |
| 93 | 492 |
| e93 | 493 |
| 93 | 495 |
| 93 | 498 |
| 93 | 499 |

### NATHANIEL C. MEANS ET AL. *v.* MARY E. HALEY.

1. TAXATION.    *Sales.    Release of state's title.    Laws 1888, ch. 23, p. 40.*

     Under Laws 1888, ch. 23, p. 40, relating to quieting title to lands in the Yazoo Delta, the sales made by virtue of the decree of the chancery court ·in the case of *Gibbs* v. *Green*, 54 Miss., 592, in which the purchasers complied with the statutory require-ments, and procured quitclaims from the state to the land held by them, vested an absolute title in the purchasers, so far as any and all claims of the state were concerned, without regard to the source from which the state acquired its claim.

2. SAME.    *Subsequent taxes.    Liability.*

     Where lands passed out of the state by its quitclaim under the act of March 2, 1888 (Laws 1888, p. 40, ch. 23), relative to quieting title to lands in the Yazoo Delta, the lands were after that liable to assessment for taxes, and to sale if the taxes were not paid; and the fact that a holder of the lands reached the conclusion that he had no title, and received from the state the taxes which he had paid, did not render the lands not subject to taxation.

3. SAME.    *Tax sale.    Purchaser.    Collector's wife.*

     A sale for taxes is not invalidated because the purchaser is the wife of the collector conducting the sale, in the absence of any irregularity or fraud.

FROM the chancery court of Leflore county.

HON. CAREY C. MOODY, Chancellor.

Mrs. Haley, the appellee, was complainant, and Means and others, the appellants, defendants in the court below. From a decree in complainant's favor, the defendant appealed to the supreme court.

[The case was heretofore in the supreme court, and is reported—*Means* v. *Haley,* 84 Miss., 550.]

Mrs. Haley filed the bill in this case against appellants and all other persons to confirm her tax title to the S. W. ¼, section 18, T. 18, R. 2, W., in Leflore county. The bill sets out a complete chain of title from the United States to complainant; also title under a sale to her for taxes on the 5th day of March, 1900, for the taxes of 1899. The answer sets up that complainant was the wife of J. L. Haley, the sheriff and tax collector, who sold the land and made the deed to complainant under the tax sale, and it was therefore void; that the Delta & Pine Land Company, through whom complainant claims, abandoned any title it may have had before it quitclaimed to complainant. The constitutionality of the act of 1888 (Laws 1888, p. 40, ch. 23) was assailed. The proof showed that the land in controversy was once owned by the liquidating levee board, and was sold under the decree of the chancery court of Hinds county, in the case of *Green et al.* v. *Hemingway & Gibbs,* as the property of said levee board, and that complainant holds title under that sale, and that the auditor of public accounts, acting under the said act of 1888, executed a deed conveying the state's title to this land to the complainant, and that the land was sold for taxes in March, 1900, and bought by complainant. For defendants it was shown that complainant was the wife of the sheriff and tax collector who sold the land for taxes at the sale at which she bought, and it was also shown that the Delta & Pine Land Company conveyed this land to complainant by quitclaim deed; that it had reached the conclusion that it had no title to the land, and had applied to the state and county for some taxes it had paid on the land, and had been paid back these taxes by the state and county. Defendants claimed under patents from the state of Mississippi executed to Means to part of the land in January, 1900, and the other part to Allen in August, 1900. From a decree confirming complainant's tax title, defendants appeal.

*S. R. Coleman,* for appellants.

The act of 1888, quieting title to lands in the Yazoo-Mississippi Delta, was never intended to vest by its quitclaim the title that the state had, by original grant from the United States, this court seemed to intimate in the opinion overruling the demurrer on the former appeal, but only such title as may have become vested in the state to land forfeited for taxes prior to such quitclaim. If *"stare decisis"* means the former, then the sooner it is overturned, the sooner the preposterous proposition will be wiped out of the law. There is no question from the evidence that the land in township 18, range 2, west, was never patented to Paxton, and the entries in the land office show that it was an error so palpable that each purchaser at tax sale, from Wood on down, dropped it in a short time, the land not being subject to taxation.

But suppose *"stare decisis"* is so potent an argument as to overrule the spirit and intention of the act of 1888. Then when it is shown, as by the testimony of Comfort, secretary of the Delta & Pine Land Company, that his corporation had called upon the state, county, and levee board for a refunding of taxes paid, and received the same in 1895, what title was then left in the Delta & Pine Land Company to convey to Mrs. Haley that would allow her to invoke the benefit of *"stare decisis"* in aid of the title that she acquired in 1900 ? We answer none whatever, and are not afraid that the supreme court will answer otherwise; for it must be the logical sequence of such payment, or refunding of taxes, etc., that the quitclaim under the act of 1888 was annulled and the title vested where it belonged, and, as the records show, it went to the state under the grant as swamp and overflowed land, and was not subject to sale for taxes in 1900. But suppose the title was out in some person other than the one to whom the quitclaim of the state was made. Can the wife of a tax collector buy land at the sale made by her husband ? The wife of no other trustee can do so,

as this court has decided. Will the court make an exception in favor of one holding a public trust? We rather think not.

To hold this tax title good the court must decide, first, that the sale of land for taxes, when the original title had never passed out of the state, passed the title to a purchaser under the tax sale; and, second, that the quitclaim of the state, under the act of 1888, vested the original title in the purchaser at tax sale to such an extent that even when he repudiates the quitclaim by calling for and receiving back his money, he can yet by subsequent quitclaim pass an indefeasible title to another party; and, third, that the wife of a tax collector can purchase at tax sale.

In addition to the foregoing we claim that the act of 1888 aforesaid is unconstitutional unless this court will hold that the legislature can take tax sales in certain parts of the state, relieve them from all taint, while others must abide the test of the law; that one isolated decree of a court shall exempt from question of imperfections to which all others are subject; that property belonging or that may belong to certain citizens shall be subject to one method of sale for taxation and confiscation that does not apply to all other citizens of the state.

*Pollard & Hamner,* for appellee.

The constitutionality of the act of March 2, 1888, is assailed by counsel for appellant. We believe that the same points were urged against this act by the counsel for appellants in the case of *Paxton* v. *Valley Land Co.,* 67 Miss., 96. The court there held that the state's title, whensoever acquired, passed under the conveyance executed by the auditor under this act.

We are unable to find any authority holding that the wife of a tax collector cannot purchase at sales made by him for taxes. Such sales are, as to time, place, manner, and terms, fixed by general statute, and there is no possible way for the sheriff to take advantage of any one of these matters, and the probability is too remote that he will take advantage as to price paid to

establish the rule that a woman, whose right to acquire and dispose of property independently of her husband has been fully established by law, cannot, simply because she is the wife of the sheriff, purchase property at a tax sale conducted by him. It is true that this court has held that a sheriff cannot buy land at his own sale for taxes (57 Miss., 65), but when the question as to the right of a deputy of the tax collector to buy at the sheriff's sale for taxes came indirectly before the court, the court said: "The evidence does not support the proposition that the deputy tax collector was a purchaser at the tax sale. We do not mean to decide or imply that if such were the fact the sale would thereby be invalidated." *Mixon* v. *Cleavenger,* 74 Miss., 67. The rule ought not to be more strict against the wife than against a deputy.

If, as a matter of fact, the Delta & Pine Land Company had had the taxes on this land refunded, it would not affect the title of complainant to the land. The land would simply be subject, in her hands, to the taxes that were refunded, and might be subjected to the same as in case of lands that had escaped assessment.

Argued orally by *Samuel R. Coleman,* for appellants, and by *W. M. Hamner,* for appellee.

TRULY, J., delivered the opinion of the court.

On the former appeal of this case (36 South. Rep., 257) we held that the bill of complaint set out a good and valid title in the complainant, M. E. Haley.

The main legal propositions contended for by appellants were pressed upon this court in the cases of *Paxton* v. *Valley Land Company,* 67 Miss., 96 (6 South. Rep., 628); *Id.,* 68 Miss., 739 (10 South, Rep., 77); *Shotwell* v. *R. Co.,* 69 Miss., 541 (11 South. Rep., 455). The act of 1888 (p. 40, ch. 23) was considered in those cases, and its constitutionality, which was at least questioned, there upheld. The purpose of that act, as

judicially interpreted, was to quiet and render secure the titles to lands sold under the decree of the chancery court in the suit of *Gibbs* v. *Green,* 54 Miss., 592, by vesting the title or claim of the state to the lands in all purchasers holding lands by virtue of such sale, or their vendees, who might avail themselves of the provisions of the act by complying with certain conditions and paying certain taxes. The intent of the legislature was to convey whatever interest the state might have in any of the lands, without regard to the source from which the claim of title by the state might have been derived. The express language of the act is that the deeds executed in pursuance thereof "shall have the effect of passing the title of the state to the lands embraced therein, whensoever the same may have been acquired." The argument that the legislative design was merely to grant the title of the state to such lands as were rightfully subject to sale under the decree in question is, to our minds, untenable. If the lands so sold had been in fact the undisputed property of the liquidating levee board, and therefore legally liable to sale, inasmuch as the report of sale in that case was properly confirmed, no legislative act was necessary to validate a title acquired under a sale which was in all respects formal and regular. It was because of the existence of the very fact, well known to the legislature, that, as to a large portion of the lands conveyed by the commissioners in the Gibbs-Green case, it was impossible for the purchasers of said lands to establish the title of said liquidating levee board to the same, that rendered the act of 1888 necessary. The legislature was not only aware of the inability of many purchasers to make proof of title in the liquidating levee board, but it recognized that many of the sales by which said board acquired its claim of title were voidable, if not absolutely void, and remedied that by enacting that all such sales (except as to certain occupants and claimants under the abatement act) theretofore made were "valid, notwithstanding any defect or irregularity in the same, and shall not be impeached for any cause, except that the tax

for which said land was sold had been paid." Further than this,. it is manifest from the phraseology of secs. 2 and 6 (pp. 41, 42) of the act that the legislature realized that the state was the true owner of at least some portions of the lands sold under the Gibbs-Green decree, and intended to divest the state of that title, in order that the purchasers might be encouraged to improve the lands, and thereby enhance their revenue-producing capacity.. Section 2 provides that the auditor, upon the payment to him of certain taxes, "shall execute to such applicant a deed convey- ing the state's title to the land held by said applicant under said. conveyance, from said commissioners of the Hinds county chan- cery court," and sec. 6 instructs the auditor, upon the exe- cution of such deed, to "strike from the list of lands held by the state the tract of land so conveyed." We see nothing in the lan- guage employed in this act on which to base an argument that it was the purpose of the legislature to divest the state of its title if acquired in one way, but to retain the title or claim if acquired in another way. Such a construction would not har- monize with the manifest and expressly avowed intent of the legislature. The legislature designed to conserve the public welfare in the adoption of the act under review, and, in so doing,. did not transcend its legitimate functions. To abridge that act, to ingraft exceptions upon it, to limit or contract its scope, as already judicially defined, would be to undo the good effect which it has achieved. We adhere without modification to the previous adjudications of this court with regard to the purpose and effect of this curative act, and announce as our conclusion (finally settling, we trust, this question in the jurisprudence of the state) that sales made by virtue of the decree in the Gibbs- Green case, in which the purchasers complied with the require- ments of the act of 1888, and procured quitclaims from the state to the lands held by them, vested an absolute title in such purchasers, so far as any and all claim of the state is concerned,. without regard to the source from which the state acquired its claim. This conclusion is in perfect harmony with all previous

adjudications, and is simply effectuating the legislative design as crystallized in the act under review.

The argument of counsel for appellants that the Delta & Pine Land Company abandoned all claim to the property by receiving from the state the taxes which it had paid on the particular tract in controversy, and that from thenceforth the lands were not subject to taxation, is unsound, even if the testimony by which it is sought to prove by parol a matter which, if it occurred, must of necessity be of record, was competent. The land had passed out of the state by its quitclaim deed under the act of 1888, and was from that date liable to assessment for taxes, and to sale if those taxes were not paid. The record shows due and regular assessment, and a sale with all necessary formalities upon default in the payment of the taxes lawfully levied.

Nor do we think a sale for taxes, legally made, is invalidated simply because the purchaser is the wife of the tax collector who conducts the sale, especially when there is neither averment nor proof of irregularity or actual fraud. Husband and wife are separate in property, and may invest their money according to the dictates of their individual judgments.

The state having no title at the date of its patents to appellants, appellants acquired no interest in the lands.

*The decree is affirmed.*