## C. W. PARTEE *v.* C. B. VANCE.

[59 South. 73.]

LEVEE TAXES. *Property subject to taxation.*

>   Where swamp and overflowed lands are sold for levee taxes before
>   the state parted with the title acquired from the federal govern-
>   ment, the sale was void, the land in such case not being subject
>   to taxation.

APPEAL from the circuit court of Quitman county.
HON. SAM COOK, Judge.

Action of ejectment by C. B. Vance against C. W.
Partee. From a judgment for plaintiff, defendant ap-
peals.

The land was patented to the state by the United
States government under Act Cong. Sept. 28, 1850, ch.
84, 9 Stat. 519, as "swamp and overflow land." The
patent was issued October 11, 1909. The plaintiff in-
troduced the patent from the government to the state,
and one from the state to himself, and rested his case.
The defendant claims title through a sale for taxes to
the liquidating levee board prior to 1875, and a sale by
the commissioners of the chancery court in the case of
*Gibbs* v. *Green,* 54 Miss. 592, to the Memphis & Vicks-
burg Railroad Company, and sales by the state to the
successors of said railroad company, through whom the
appellant deraigns his title.

The contention of plaintiff was that the state had
never parted with its original title at the time of the tax
sales, and that, the land not being subject to taxes of
any kind, the sale was void.

*St. John Waddell,* for appellant.

The contention of the appellee in the court below was
that as the state had never parted with its original title

at the time tax sales were made of the land, through which appellant derives title, and that said tax sales were, therefore, void and the subsequent deed to appellant was also void, and cited the case of *Edwards* v. *Butler,* in 89 Miss. 179, as a conclusive authority on this proposition.

The appellant contended that under the act of 1888 (Laws of 1888, p. 40, ch. 23) the deed from the state of Mississippi to the railroad company under which he claimed title, had the effect of conveying not only all title which the state had to said lands by reason of tax sale made thereof, but also any and all other title, no matter from what source derived, and cited the case of *Means* v. *Haley,* 86 Miss. 557, as a conclusive authority on this proposition, and that by the deed made to the railroad company under said act of 1888 the state had parted not only with its title to said land acquired through tax forfeitures, but also any and all original title which the state may have had to the same. The case of *Edwards* v. *Butler,* above mentioned, involved Chickasaw school lands and the administration of a trust in connection with those lands; while the case of *Means* v. *Haley* above mentioned, involves swamp and overflowed lands, and the state's title to the same, just as is involved in this case. The circuit court preferred to follow the holdings of this court in the *Edwards* v. *Butler* case, instead of the contrary holding in the case of *Means* v. *Haley* above mentioned, and a judgment was rendered in favor of the plaintiff in the court below and the defendant has appealed.

We submit that an examination of the case of *Means* v. *Haley* will show that it is a case exactly similar in all its facts to the case at bar, and that the case of *Edwards* v. *Butler* is easily differentiated from the case at bar, by the fact that it involved Chickasaw school lands and a trust, while the case of *Means* v. *Haley,* involved swamp and overflowed lands, about which there was no trust.

We see no reason why the same rule should not apply
to the state when it sells land that applies to individuals;
for if an individual sells land and executes a valid con-
veyance for a valuable consideration, the universal rule
is that a purchaser gets all the title that the vendor
had at the date of the deed no matter from what source
derived, and why this is not true when the state under-
takes to convey land, cannot easily be understood.

Certainly the legislature could authorize the state to
part with all title to any lands it held upon payment of
a stated consideration, and by executing such deed as
might be prescribed; this was all done in the deed execut-
ed by the state under the act of 1888 and through which
appellant claims title, and an examination of the act of
1888 above mentioned, will show that it authorized the
state to convey by deeds to be executed under that act
all of its title to the lands sold, no matter from what
source derived; and just why this deed did not convey
the title under the swamp land act as well as under the
forfeited tax sales, cannot readily be seen or understood.
Judge TRULY in *Means* v. *Haley* considered this very
proposition and decided that the state did convey both
the swamp land title as well as the tax title, and an-
nounced in that decision that this court intended to for-
ever put at rest that question.

We respectfully submit that the case of *Means* v.
*Haley* announced the better rule in cases of the kind
now under consideration. In addition to the foregoing we
understand that this court has recently on November 20,
1911, by its decision in the Hamner case, held that pos-
session for five years of lands under a sale of same for
taxes give good title although there may not have been
any valid power of sale in making the tax sale; we have
not seen this decision yet and we are speaking from in-
formation only as to its effect, but if our information
be true, and it can be shown that the appellant had such
possession for five years of the land in controversy, as

PARTEE *v.* VANCE.

its character permitted, then under the decision of the Hamner case, he should be permitted to show this fact.

*P. H. Lowery,* for appellee.

The only question in this case is whether or not a tax title derived from tax sales before the state parted with its title of swamp lands in good against the holder of the title under a patent subsequently made by the state to the lands as swamp lands.

The appellant relies upon the case of *Means* v. *Haley.* In addition to the case of *Edwards* v. *Butler* referred to in appellant's brief I call the court's attention to the case of *Creegan* v. *Hyman,* 93 Miss. 481.

And especially to that part of the decision pages 492 and 495 under the heading "Third."

Appellant refers to the recently decided case of Hamner. This decision cannot avail the appellant for two reasons.

1st. There was no proof in this case of any actual occupancy or possession of the land. The appellant submitting the case on the record alone.

2nd. The question here is not one of sale under a void assessment but a sale of land for taxes which was not taxable at any sale of which for taxes, under any kind of an assessment, was absolutely void.

*Jas. R. McDowell,* for appellee.

The court held that at the time the land was sold for taxes, the state had never parted with title, and therefore no taxes were due on the land, and the tax sale was void, and therefore subsequent deeds through which appellant claims, were also void. I submit that the action of the court below on the record was eminently proper.

Appellant relies upon the case of *Means* v. *Haley,* 86 Miss. 557. The opinion in this case was delivered through Justice TRULY by a court composed of Justice WHITFIELD, CALHOUN, and TRULY.

I do not think the court in the Haley case intended to
hold that the property of the state could be illegally as-
sessed and sold for taxes, and the state and its grantees
be estopped from setting up a void sale under an assess-
ment made without authority of law upon land not liable
for taxes.   The Haley case was a controversy between
two individuals, neither of whom claimed through pat-
ents from the state or that the state had never parted
with title to the land until after the tax sale.  I think
the Haley case and the case at bar are   easily   distin-
guished.

But if the court did, by inference, announce such a
holding, it is expressly held to the contrary in the case
of *Howell* v. *Miller,* 88 Miss. 665.  In that case the land
was swamp and overflowed land, and the case presented
for decision is very similar to the one at bar.  I invite
a reading of the briefs for appellee in that case, which
contain not only a strong argument, but valuable cita-
tions as well.

In the Howell case the court held, speaking through
Justice CALHOUN, as follows:

"The swamp and overflowed lands were never the sub-
ject of taxation and sale for nonpayment.  Not being
subject to any tax, any assessment or sale of them had
no warrant in law, and the purchaser acquired no right
against the state, or the state's vendee, who bought with
the warrant of the law for their special sale."

Again, the court, speaking through the then Chief Jus-
tice WHITFIELD, in the case of *Edwards* v. *Butler,* 89
Miss. 179, followed the case of *Howell* v. *Miller,* though
really no reference is made to it in the opinion.  In the
Edwards case, Justice WHITFIELD uses the following lan-
guage.

"These lands have since been known as the 'Chicka-
saw lands.'   It is perfectly manifest that they were
never subject to taxation; that there never existed
any power anywhere to sell them for taxes, and hence

all the tax titles set up in this record are absolutely null. and void. These lands are held in trust by the state of Mississippi for the education of the children of the townships in which these sixteenth sections lie. They were never taxable, and hence any effort to subject them to taxation is void.''

In the Edwards case the point was raised that a deed under chapter 23 of the Acts of 1888 entitled, ''An act to quiet the title to certain lands in the Yazoo Delta, which were sold by the commissioners of the chancery court for the first district of Hinds county in the case of Joshua Green and others against Hemingway and Gibbs, Treasurer and Auditor and exofficio Liquidating Levee Commissioners,'' conveyed whatever title the state had, no matter whether it had ever originally parted with title or not, and that even though an assessment and sale for taxes was void, still the title of the state passed to its vendee. The court held against this contention, however. I quote from the opinion as follows:

''The act of 1888 . . . as a matter of course, was never intended to embrace any other lands than the character of the lands set out in the caption of that act, and had no relation whatever to lands like those in the record. The history of the act of 1888 is perfectly well known. It was intended, as it states, to quiet the title of certain lands in Yazoo Delta, which had been sold by the commissioners of the chancery court of Hinds county. The title of these lands had become involved in the greatest confusion by reason of numerous tax sales occurring at various times, and this confusion constituted so great a cloud upon the titles to lands in the delta, that this act, wisely or unwisely, was passed to quiet title to that specific character of lands. The legislature never dreamed of applying its provisions to any other lands than those named in the caption of the act, and hence the land in controversy was totally unaffected, of course, by its provisions. To give the act its opposite construction would make it manifestly unconstitutional.''

Thus it will be seen that if by inadvertence the opinion in the case of *Means* v. *Haley, supra,* was so worded that it might be construed as decisive of appellant's claim in the instant case, it has been overruled by the two cases of *Edwards* v. *Butler* and *Howell* v. *Miller,* the opinion in these cases being delivered by the two associates of Judge TRULY.

I think, therefore, that appellant's contention that a deed from the state, under the acts of 1888, *supra,* vested in him a perfect title in the light of the case of *Means* v. *Haley,* must fail in the light of subsequent decisions. It will not do to say that the land in the Edwards case was Chickasaw school lands, and not swamp lands. The principle of the law is the same; neither is liable for taxes. The state is the owner of the swamp lands, and is the owner as trustee for the benefit of common schools of the school land. Neither class of land is liable for a tax, and a sale of either for taxes, is therefore void. The Howell case, however, was a swamp land case.

I call attention also to the case of *Creegan* v. *Hyman,* 93 Miss. 481, in which case the opinion was delivered by Chief Jusice WHITFIELD, whose opinion is very elaborate. I invite a careful reading of the same, especially that part of it from pages 492 to 495. In that case the court reaffirmed its decisions in the cases of *Howell* v. *Miller, Edwards* v. *Butler,* and with reference to the Haley case, on page 495, said: ''The title of appellant to the land in controversy is perfect, and the contention set up by appellee cannot be maintained. *Means* v. *Haley* had no such purpose, and if it had, it has been overruled already by the two cases named.'' And further on, page 493:

''Nothing whatever was decided so far as the decision is concerned, in *Means* v. *Haley,* 86 Miss. 557, except that where there had been sales of land to the levy board, which lands were the subject of sale for taxes, no irreg-

ularity or defects in such sales, save constitutional defects, should avail after the passage of the act of 1888 (Laws of 1888, p. 40, ch. 23) to defeat the title to lands so held under such sales to said levy board. This is shown by a careful reading of the opinion at page 562 of 86 Miss. and 537 or 38 So. giving the history of the act.''

If counsel's contention was sustained, it would be an easy matter, as argued by counsel for appellee in the Howell case, for a corrupt assessor to list for taxes the lands of the state in any county, and sell them for taxes, and defeat the state's title. The only way the state can part with title to its land is by patent, and until the state does part with title to its land, its lands are not subject to taxation and no tax deed is valid.

Counsel refers to the case of *Hamner* v. *Yazoo Delta Lumber Co.*, recently decided and not yet reported, as being favorable to his contention. A reading of the opinion in that case discloses the fact that in the Hamner case there was a void assessment on lands legally liable for taxes, and under a tax deed based upon a void assessment, a claim of title was asserted. In that case there was actual occupation of the land for a space of more than three years after the expiration of two years from the date of sale thereof for taxes. There the court simply held that under section 2735, of the Code of 1892, which appears in the Code of 1906 as section 3095, that ''actual occupation for three years after the expiration of two years from the day of sale, is an absolute bar to an original owner to set up any defense, or to test the right to the occupants claiming under the tax conveyances.''

In the instant case, it is not shown here by the record that appellant occupies or ever did occupy this land, and it is further shown that this land was never liable for taxes. The court did not, in the Hamner case, either expressly or impliedly, overrule the Edwards case or the Howell case, or the Creegan case.

Our court held in the case of *Mitchell* v. *Bond,* 84 Miss. 72, quoting from the syllabus as follows:

"Statute of limitation. Code 1892, section 2735. The three years statute of limitations, Code of 1892, section 2735, providing that three years actual occupation of land under a tax title shall cure all defects in the title and bar suits to recover the land, has no application where the land was not subject to taxation at the time it was sold for taxes."

And again, in the case of *Hoskins* v. *I. C. R. R. Co.,* 78 Miss. 768, as follows:

"Public lands. Homestead laws of United States. Exemption from taxation: Lands entered under the homestead laws of the United States are not liable for taxation before the time at which a right to the patent is perfected."

"The three years statute of limitation (Code 1892, section 2735) barring suits for lands against parties holding under tax title, applies only to lands that were taxable when sold for taxes."

This last case was especially approved in the Hamner case. The court through Justice McLEAN, uses the following language:

"It is needless to say that this opinion does not conflict with *Hoskins* v. *Railroad Co.,* 78 Miss. 768, for the reason given in that opinion that the legislature could not in the nature of things have intended to include property which was not subject to assessment for taxes."

SMITH, J., delivered the opinion of the court.

It may be that the contention of appellant is supported by the case of *Means* v. *Haley,* 86 Miss. 557, 38 South. 506, and that that case was not necessarily overruled by *Howell* v. *Miller,* 88 Miss. 655, 42 South. 129, or *Edwards* v. *Butler,* 89 Miss. 179, 42 South. 381, as to which we express no opinion, for the reason that it was expressly overruled in the later case of *Creegan* v. *Hyman,* 93

Miss. 481, 46 South. 952, in so far as it dealt with the matter now under consideration. In order to uphold appellant's contention, it will be necessary for us to overrule this last-named case, and this we decline to do.

The judgment of the lower court is therefore correct, and is affirmed.

*Affirmed.*