Syllabus.

NATIONAL BANK OF THE REPUBLIC v. LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY.

72   447
f77   63
72   447
f93   496

1. TAX TITLE. *Prima facie evidence. Act 1888, p. 40. Green v. Gibbs.*

Although § 3, act 1888 (Laws, p. 40) makes the auditor's deed to the holder of a tax title under conveyance from Gwin and Hemingway, commissioners in case of *Green v. Gibbs, prima facie* evidence of paramount title, one claiming under such deed must point out the particular title which the state claimed, and in aid of which the presumption is invoked. He cannot, by merely averring generally title in the state, devolve on his adversary the burden of showing the negative fact that no tax sale was ever made to the state.

2. SAME. *Prima facie effect. When overcome. Auditor's deed. Code* 1871, § 1698.

The *prima facie* effect of a deed from the auditor under act of 1888 (Laws, p. 40) is overcome, where the only evidence of title in the state is a list of land sold to the state in 1875, certified by the auditor, and it nowhere appears that the list was ever filed by the tax collector with the chancery clerk, and it is not certified by the tax collector as required by § 1698, code 1871.

3. SAME. *Code* 1871, § 1698. *Sales to state. List. Certification.*

Under § 1698, code 1871, requiring the tax collector to file with the chancery clerk a list of land sold to the state "certified under his hand to be correct," the certificate of the chancery clerk will not be accepted as a substitute for that of the tax collector. *Ferrill v. Dickerson,* 63 Miss., 210.

4. CHANCERY PLEADING. *Discovery. Unsworn answer. Evidence.*

Where a bill to quiet title calls on defendant for discovery as to the muniments of his alleged title, an unsworn answer setting up a tax sale is not evidence thereof.

FROM the chancery court of the first district of Coahoma county.

HON. W. R. TRIGG, Chancellor.

The opinion sufficiently states the facts.

*J. W. & W. D. Cutrer*, for appellant.

The deed from the auditor, under act 1888, did not confer any title where none was vested in the state, and was not intended to confer any title where there had been no precedent sale to the levee board. The deed is *prima facie* evidence of all such sales, and nothing more; it cured irregularity in sales to the levee board, and provided that nothing but payment should be a defense; but this applied only to levee sales.

As to the sales for taxes for the years 1868 to 1874, the evidence shows that the taxes had either been paid or the land redeemed. There was a total failure to show any delinquency for taxes claimed by the state prior to 1874. Accordingly, the lands were not subject to sale under the abatement act. *Chamberlain* v. *Lawrence Co.*, 71 Miss., 949. The only effort to show delinquency is by a certificate of the chancery clerk showing what were delinquent lands. This was not sufficient, and where the foundation of the claim of the state has been rebutted, the presumption created by the auditor's deed is overthrown, and the deed carries no title.

As to the sale to the state in 1862, there is no evidence of this. The bill called for discovery, and the unsworn answer setting up such sale is not evidence.

*Mayes & Harris*, for appellee.

Because of the *prima facie* case made by the act of 1888, it was incumbent on complainant to overcome each of the titles specified in response to the prayer for discovery. Under the operation of the five-year limitation of the acts of 1860, and of the three-year limitation of § 1709, code 1871, those titles could only be overthrown by showing actual payment. *Patterson* v. *Durfey*, 68 Miss., 779. This burden has not been met, and we submit the showing as to payment of taxes is insufficient.

No evidence whatever is offered by complainant as to the title of 1862. This sale was set up in response to the prayer

for discovery. The auditor's deed of 1888 conveyed any title held by the state, and is *prima facie* evidence of paramount title. Under this act it is not necessary to place in evidence the supplementary documents in aid of the deed, such as the list of land sold to the state. *Patterson* v. *Durfey, supra.* It is true that case refers to the force of § 1 of the code of 1888, but the reason of the decision must also produce a similar result under § 4, under which a bare production of the auditor's deed makes a *prima facie* case of paramount title. It is not for the defendant to make out this title, but it is for the plaintiff to overturn it. The whole question is one of the burden of proof.

As to the state tax title of 1874, this would be good and sufficient under *Gamble* v. *Witty*, 55 Miss., 26, if the papers exhibited on the trial conformed to law. The list of lands exhibited is apparently the list of insolvencies made out under § 1720, code 1871. The question, therefore, raised is whether the irregularity of offering the delinquent list as the list of lands sold, and its acceptance, as such, by the clerk and by the auditor, and its entry upon the books of lands sold in the auditor's office, as such, is such a fatal departure from the statute as will vitiate the title. The defect is cured by the operation of the three-year statute of limitations under the code of 1871. If not, it is such evidence as will, in connection with § 4 of the act of 1888, support the title vested by the conveyance of the auditor under that statute. It was, at least, a title *claimed* by the state, and this fact classed them as lands salable under the abatement act, if the taxes of 1874 were unpaid. That they were unpaid is shown.

COOPER, C. J., delivered the opinion of the court.

The appellant, claiming to be the owner of the lands in controversy, exhibited its bill in the chancery court of Coahoma county to cancel as clouds upon its title certain conveyances described in the bill under which the defendant claims title, and

also to cancel any and all other claims of title now held or asserted by the defendant.

The bill avers that, so far as the complainant is advised, the claim of title of the defendant rests—

1. Upon a sale to the liquidating levee board made in May, 1868.

2. A conveyance of the title of the levee board made under the decree in the case of *Green* v. *Gibbs and Hemingway, ex officio Liquidating Levee Commissioners.*

3. A sale to the state made on the tenth day of May, 1875, under the provisions of the act of March 1, 1875, commonly known as the "abatement act."

4. A conveyance by the auditor made under the provisions of the act of 1884, entitled "An act for the benefit of purchasers of levee lands sold under the decree of the chancery court of Hinds county, first district, in the case of *Joshua Green et al.* v. *Gibbs and Hemingway, Auditor and Treasurer, and ex officio Liquidating Levee Commissioners,*" approved March 4, 1884; or under the provisions of the act of March 2, 1888, entitled "An act to quiet and settle the title to certain lands in Yazoo Delta."

As to the sale to the liquidating levee board, the complainant alleges the same to have been invalid, because it, the complainant, had paid the taxes for which the land purports to have been sold. It is further averred that all levee taxes accruing on said lands from the year 1867 up to and including the year 1873 had either been paid by complainant, or, when the lands had been sold, that they had been redeemed by complainant within the time allowed by law for redemption.

The sale to the state under the "abatement act" the complainant avers to have been invalid, for the reason that said lands were not delinquent for unpaid taxes for any year anterior to the year 1874, and claimed under tax sales made for such anterior delinquency.

The complainant further averred that it knew of no other

tax sales under which the defendant claimed title, but prayed discovery "by the defendant of any and every claim of conveyance by or to it, or to the state or levee board, if any it have, other than that which complainant avers and charges to be the defendant's only muniments of title, and that it be required to file with and as a part of its answer all deeds in its possession or under its control; or, if the defendant have no such deeds under its possession or control, then that it file copies of all such deeds, or give to complainant an accurate description of the books and pages thereof showing the record or evidence of all deeds or conveyances or claims of title purporting to convey the title to any of the lands aforesaid to the state, liquidating levee board or to defendant."

By the bill the complainant admits that the defendant, claiming to be the owner of the lands, has expended large sums of money in the payment of taxes accruing during its claim of title, and offers to refund all such sums as, upon an accounting, may be found to be due.

The defendant, by its answer, denied all the material allegations of the complainant's bill, and averred that all of said lands were duly and legally sold to the liquidating levee board in May, 1868; that a part of said lands were again sold to the levee board in the year 1871; a part to the state in the year 1868, and a part to the state in 1862, each sale being for the taxes legally due and charged on the land sold for the year next before the sale; that all of said lands were sold to the state on the tenth of May, 1875, under the act of March 1, 1875, known as the "abatement act;" that the title acquired by the levee board was conveyed by Gwin and Hemingway, auditor and treasurer and *ex officio* levee commissioners, acting under and in execution of the decree in the cause of *Green* v. *Gibbs and Hemingway* to the Vicksburg & Memphis Railroad Co., and, by consolidation with said company, the defendant acquired the title held by said company; that, on September 30, 1884, the auditor of the state, in pursuance of the act of

March 14, 1884, and in the year 1888, in pursuance of the provisions of the act of March 2, 1888, had, by deed, conveyed to the defendant the title before those dates held by the state. By reason of all which conveyances the defendant claimed to be the real owner of all the lands in controversy.

An agreement of counsel relieved the complainant of making proof that it was the original owner of the land; and it was further admitted that complainant was entitled to relief unless its title had been divested by sale of the lands for taxes either to the levee board or to the state. On final hearing the court dismissed complainant's bill.

In this court the appellee admits that there was a redemption from the sale of 1871 set up in its answer.

As to all the sales of the land for taxes from the year 1868 to 1874, we think it has been sufficiently shown that all taxes were paid, or the lands, if sold, duly redeemed from such sales within the periods allowed by law.

This leaves the defendant's claim of title to rest upon (1) the sale to the state in 1862; (2) the sale to the state on May 10, 1875; (3) a sale to the state on March 11, 1875, which sale is not referred to in the pleadings, but which the defendant claims to have established by its evidence. These titles the defendant claims to have secured by virtue of a deed made to it by the auditor in pursuance of the provisions of the act of 1888; for, although in its pleading the defendant claimed to have secured a conveyance from the auditor under the provisions of the act of March 14, 1884, no evidence in support of this allegation was introduced.

In order that the contention of counsel may be fully understood, it is necessary that parts of the act of March 2, 1888, shall be set forth. The preamble of the act is—

"WHEREAS, There has heretofore been sold by the commissioners of the chancery court of the first district of Hinds county, in this state, in the suit of Joshua Green and others against Hemingway and Gibbs, treasurer and auditor and *ex*

*officio* liquidating levee commissioners, a large amount of land claimed heretofore sold to the board of liquidating levee commissioners for the taxes due said board, and to have been its property; and, whereas, by reason of the lapse of time, the destruction of records and the loss of original tax collectors' deeds, it has become difficult, in many instances, for the purchasers of said lands to establish the title of said liquidating levee board to the same; and, whereas, the development and settlement of that portion of the state is much retarded by the unsettled condition of land titles, and the public interest will be promoted by legislation that will make them secure; therefore,

"*Be it enacted by the Legislature of the State of Mississippi:*

" SEC. 1.   .   .

" SEC. 2. *Be it further enacted,* That the auditor of public accounts be, and he is hereby, required, upon application made to him by any purchaser of said levee lands from said commissioners of said Hinds county chancery court, and any persons or corporations holding title under such purchaser   .   . to execute to such applicant a deed conveying the state's title to the land held by such applicant under said conveyance from said commissioners of the Hinds county chancery court.   .   .

" SEC. 3. *Be it further enacted,* That said auditor's deed, executed in pursuance of the preceding section, shall be taken and held in all courts of this state as *prima facie* evidence of paramount title."

The allegation in the unsworn answer that the lands were sold to the state in the year 1862, can have no influence in this cause.   The bill, in its averments, presents a novel recourse to and application of the principle of discovery and production of instruments in equity.   The whole relief prayed in these respects has relation, not to the title of the complainant, but to that of the defendant.   The complainant says by its bill that it is the owner of the land, and calls on the defendant, if it has any title other than that known to complainant, to discover the same, setting out all muniments, in order that the complainant

may not be taken by surprise by the introduction of evidence of an unexpected title on the hearing. What effect discovery by a sworn answer might have had it is unnecessary now to consider, for, as we have said, the answer is not under oath, and is therefore not evidence. 1 Dan. Ch. Plg., 843 *et seq.*

There is an entire absence of evidence that any sale for taxes was made in the year 1862, and since the averment of that fact in the unsworn answer is of no effect, the case must be considered without regard to that averment.

This leaves the title of defendant to stand upon the sale of May 10, 1875, under the "abatement act" referred to in the pleading and evidence, and that of March 11, 1875, not mentioned in the pleading, but which the defendant claims is proved as a fact; the titles derived by the state under these sales, if any, having passed to the defendant by virtue of the deed made by the auditor under the provisions of the act of 1888 hereinbefore noted.

Before considering these specific sales for taxes—those of March 11 and May 10, 1875—it is necessary to determine what force and effect is to be given to the auditor's deed under the third section of the act of 1888, which declares that such deed "shall be taken and held in all the courts of this state as *prima facie* evidence of paramount title."

By the first section of that act it was provided that the deeds executed by the commissioners of the court in the case of *Green* v. *Gibbs & Hemingway* "shall be taken and held in all the courts in this state as *prima facie* evidence of the regularity and validity of said chancery court proceedings, and of the authority of said commissioners to sell, and of the proper confirmation of said sale, and shall also be taken and held in all the courts of this state that the land embraced was duly and legally sold to said board of levee commissioners up to and including the sales of 1874, for the taxes due and unpaid thereon, and that the title conferred by said deeds is, to all intents and purposes, valid."

In *Patterson* v. *Durfey*, 68 Miss., 779, the appellant claimed title under a sale to the levee board in 1869, and also under a sale to the state under the "abatement act." He had the deed of the commissioners made under the decree in *Green* v. *Gibbs* and the auditor's deed made under the act of 1888. The certifi- cate of the auditor showed a sale in fact made under the "abatement act," but there was no evidence of a deed to the levee board, nor of a conveyance to the state for any year anterior to the year 1875. We held, and properly, that the conveyances under the act of 1888 were *prima facie* evidence of the facts that the land was sold to the levee board when it was recited to have been sold, and that in 1875 it was of the class of land salable under the abatement act. In delivering the opinion of the court in reply to a suggestion of error, Judge Woods inadvertently said that the first section of the act gave to the deeds made by the levee commissioners and the auditor the effect of being *prima facie* evidence, instead of saying that this section gave that effect to the deed of the levee commissioners, while the third section operated on the deed from the auditor, an inadvertence that is manifest from a mere reading of the opinion and act.

The deed of the auditor is *prima facie* evidence of title under the circumstances shown in evidence in *Patterson* v. *Durfey*, *i. e.*, in cases in which the party claiming under a sale for taxes is unable to show that all provisions of law governing such sales has been complied with, but, so far as the facts are disclosed, it does not appear that anything done was in disregard of the law. But we cannot assent to the proposition that the deed, of and by itself, establishes an indefinite number of tax sales, beginning, it may be, with the organization of the state, or of proving any undesignated one of such indefinite number. The contention of the appellee, as we understand it, is this. The deed is *prima facie* evidence of paramount title, and, to meet the case made by the deed alone, the party claiming adversely must begin with the origin of the title and affirmatively

show that no tax sale of the land has ever been made to the state, or must show the sale and a redemption therefrom.

If forced to elect between this construction and that arising from a strict and literal reading of the act, by which the effect of the deed as evidence would be destroyed by showing the original title, we should unhesitatingly adopt the literal and strict reading of the act.

But, when we read the whole act, and consider its purpose as shown by the preamble and by the body of the act, it is evident that the deed is made *prima facie* evidence in aid of a particular claim of title made by the state under some designated and particular tax sale. The purpose of the deed authorized to be made by the auditor is to pass some particular title claimed by the state, and not to make an instrument in form a conveyance, but in truth carrying no estate. The statute did not contemplate a conveyance from the state claiming nothing in the land, to the end that, as against the original owner, a mere presumption should be transferred to his adversary. One claiming under the deed of the auditor must point out the title which the state claimed to own and to transfer to him. He cannot, by a mere averment that a sale was made in one year or another, and the production of the auditor's deed, put his adversary to prove that, in fact, the asserted sale was never made. To give this effect to the deed would be, in effect, to hold that a conclusive instead of a *prima facie* case is made by its production, and manifestly this was never contemplated.

The sales to which the appellee may apply the auditor's deed and have the benefit of the *prima facie* case made thereby, are those claimed to have been made on March 11, 1875, and May 10, 1875. The sole evidence that there was a sale on March 11 is the list of lands sold on that day, as certified by the auditor. Aside from the fact that it nowhere appears that this list was ever filed by the tax collector with the clerk of the chancery court, as he was by law required to do, the list itself is fatally defective in that it contains no certificate by the collector,

as the law required.    Code 1871, § 1698.    It nowhere appears, except by the certificate of the clerk, that the list was ever, in fact, furnished by the collector, and it is settled that the certificate of the clerk cannot be substituted for that of the collector.    *Ferrill* v. *Dickerson*, 63 Miss., 210.

The *prima facie* case made by the auditor's deed under the act of 1888, as to this sale is met and overturned by the fact thus proved that the law governing the sale was not complied with by the collector.

The sale for taxes on May 10, 1875, was void because it is affirmatively shown in the evidence that all taxes prior to those for the year 1874 had been paid, and the lands were not, therefore, of the class salable under the "abatement act."    *Gamble* v. *Witty*, 55 Miss., 26; *Clymer* v. *Cameron, Id.*, 593; *Dingey* v. *Parton*, 60 Miss., 1038; *Chambers* v. *Myrick*, 61 Miss., 459; *Prophet* v. *Lundy*, 63 Miss., 603.    It follows from this that the complainant, who was confessedly the original owner of the lands, having successfully assailed all the tax titles under which the defendant claims, was entitled to the relief prayed. The decree must, therefore, be reversed, and the cause remanded, with directions to the court below to enter a decree canceling the title of defendant, and to direct an account to be taken of the taxes paid on the lands by the defendant as prayed by complainant, in order that the sum found due may be paid by complainant according to its offer.

*Reversed.*