GEORGE R. EDWARDS v. GEORGE W. BUTLER, ET AL.

[42 South. Rep., 381.]

1. TAXATION. *Chickasaw school lands. Acts of Congress, 5 Stat. at Large* 116, *ch.* 355; *Ib.* 490, *ch.* 39.

   Lands granted to the state by congress "for the use and benefit of schools," known as the "Chickasaw school lands," were not taxable while title remained in the state, and a sale for taxes of nontaxable land is void.

2. SAME. *Auditor's deed.*

   An auditor's deed, predicated of a tax sale, will not invest the grantee therein with title to Chickasaw school land improperly sold to the state for taxes before it became the subject of private ownership.

3. SAME. *Laws* 1888, *ch.* 23, *p.* 40. *Quieting tax titles.*

   Laws 1888, ch. 23, p. 40, entitled "An act to quiet and settle the title to certain lands in Yazoo Delta which were sold by the commissioners of the chancery court of Hinds county," etc., embraced no other lands than those mentioned in the caption of the act, and had no relation to Chickasaw school lands which had been illegally sold by the state for taxes.

FROM the chancery court of Quitman county.

HON. PERCY BELL, Chancellor.

Edwards, the appellant, was complainant in the court below; Butler and others, the appellees, were defendants there. From a decree denying complainant all relief and dismissing his bill he appealed to the supreme court.

The complainant deraigned title as follows: The United States to the State of Mississippi, by acts of congress of July 4, 1836, and June 13, 1842, for school purposes in Chickasaw Cession, in lieu of sixteenth sections; State to Emma Edwards, by patent dated February 17, 1905; Mrs. Edwards to complainant, by deed of March 13, 1905. The defendants claimed

title by virtue of a sale of the land in question to the liquidating levee board for unpaid taxes May 13, 1873; sale to No. 1 levee board for unpaid taxes January, 1873; sale to the state for unpaid taxes January, 1873; sale to the state for unpaid taxes May 10, 1875, under the abatement act of 1875; deed from liquidating levee commissioners and commissioners of the chancery court of Hinds county in the case of *Green* v. *Gibbs,* 54 Miss., 592, to Memphis & Vicksburg Railroad Company, October 3, 1881; an auditor's deed from state to Louisville, New Orleans & Texas Railway Company, September 30, 1884; deed by the state, through its auditor, May 23, 1888, made under Acts 1888, p. 40, ch. 23; deed from the Yazoo & Mississippi Valley Railroad Company (the successor of the above mentioned railroad corporations) to defendant Butler. The defendants contended that they acquired, by the auditor's quitclaim deed, executed in pursuance of the act of 1888, whatever title the state held, no matter' how or whence acquired.

*Harper & Potter,* for appellant.

The legal title to the land involved, being Chickasaw school land, and governed by the same provisions as the sixteenth section lands, was held either by the state or the United States from 1842 to 1905, in trust for school purposes, and hence the land was never liable for taxes, unless the act of 1888 be held to have authorized a conveyance of them.

It is certain that the state, through its legislature, never asserted any right or power to tax these lands, never declared any purpose or intention to tax them, and never authorized any agency created by the state to do so. It is equally certain that the state, as trustee, had no such authority nor power, even had it so attempted. If these lands, either by negligence, mistake or fraud, were put on the tax roll of the levee board, and purchased by it, the whole proceedings were absolutely void and non-effective, and no title was acquired thereby, nor by the sale under the *Green* v. *Gibbs* decree, and in spite of all

such proceedings, the title to the lands remained in the state, in trust, for school purposes, until sold, as such, to Edwards in 1905.

But defendant's contention that the auditor's quitclaim deed, executed in pursuance of the act of 1888, conveyed the title of the state, derived by it from the United States, and held by it as trustee, seems to us wholly untenable. To support such view, defendants rely solely upon the case of *Means* v. *Haley,* 86 Miss., 557. But this case, in our judgment, does not support any such contention.

It is perfectly manifest that the *Means case* and the case at bar are entirely different. In the former case, it was held that the auditor's quitclaim deed conveyed the state's title to lands held by it from the United States under the swamp land act of 1850. Now, it has been repeatedly held by the United States supreme court that these swamp lands were not held by the state under any sort of contract, or under any sort of trust, but that the state could do as it saw fit with them. *Mills Co.* v. *Chicago R. R. Co.,* 107 U. S., 557; *Hagar* v. *Reclamation Co.,* 11 U. S., 701; *United States* v. *Louisiana,* 127 U. S., 182; *Cook Co.* v. *Auditor General,* 79 Mich., 100.

On the other hand, these Chickasaw school lands, which were held by the state upon precisely the same tenure as the sixteenth section lands, were and are held by the state in trust for the use and benefit of the schools of their respective territory. It matters not whether this trust be held to have been created by Georgia through its act of cession, as decided in the case of *Madison County* v. *Jones,* 72 Miss., 777, or whether the trust was created by the acts of congress, as had been held by this court in many previous decisions. It has always been conceded both by the judicial and legislative branches of the government that these school lands constituted a trust fund, and could not by any sort of intrigue or indirection be diverted; that the state's honor was pledged to a faithful discharge of such trust. *Morton* v. *Grenada Academy,* 8 Smed. & M., 785.

From the very beginning, continuously and consistently, up to the present time, the state has always dealth with these Chickasaw school lands and sixteenth section lands strictly as lands held in and under a sacred trust, and has from the beginning refused to sell the Chickasaw school lands at less than six dollars per acre, and kept the funds derived therefrom as a separate trust fund, and never in a single instance, has it undertaken to give away these lands or divert them to any other purpose than for the use and benefit of the Chickasaw territory. *Yates* v. *Clark,* 56 Miss., 212; *Cohea* v. *Hemingway,* 71 Miss., 22; *Hay* v. *Mayer,* 34 Am. Dec., 463; *Holder* v. *Am. Inv. & Loan Co.,* 94 Ga., 640; *New Eng. Mfg. Co.* v. *Buice,* 98 Ga., 795; *Bell* v. *Twilight,* 22 N. H., 500; *Towles* v. *Fisher,* 77 N. C., 437; *Ridgely* v. *Cross,* 83 Md., 161; *Daniel* v. *Spelt,* 100 Fed. Rep., 727 (2 Wash. Real. Prop. sec. 1717, p. 628); Sugden on Powers, vol. 1, p. 453; 4 Kent's Com. (13th ed.), p. 335; 2 Perry on Trusts, sec. 511 (c).

*St. John Waddell,* for appellees.

This contention of appellees is fully sustained, and this case is fully covered by the decision of this court in the case of *Means* v. *Haley,* 86 Miss., 557. That case was a contest between the holder of the original title to a tract of land acquired from the state by patent as either swamp or overflowed lands or internal improvement lands, and the holder of a title to same based upon a Gwin & Hemingway deed and a deed from the state under the act of 1888; and Judge TRULY, in delivering the opinion of the court, held that the holder of the title under the Gwin & Hemingway deed and deed from the state under the act of 1888 had the superior title to the land, and that when the state executed the deed under the acts of 1888 it not only conveyed what title it had acquired to the lands by tax sales, but also conveyed the original title which the state held to the same.

The act of 1888 is fully explained by the court in its opinion in that case, and the court expressly states therein for the pur-

pose of finally settling this question in the jurisprudence of
this state, that sales made by virtue of the decree in *Gibbs* v.
*Green,* in which the purchasers complied with the requirements
of the act of 1888, and procured quitclaims from the state to
the lands held by them, vested an absolute title in such pur-
chasers, so far as in all claim of the state is concerned, without
regard to the source from which the state acquired its claim.
This decision is controlling and ought to be conclusive in the
case at bar.

The very object and purpose of the act of 1888 was to give
confidence to purchasers of lands under the *Gibbs* v. *Green*
decree, so as to induce them to improve the lands and bring
into successful cultivation and use property which had always
previously been an interminable forest and swamp. This policy
of the law bore fruit in this case. As holders of the commission-
er's deed and the deed from the state, appellees went on the
land, cleared it up, built houses, and prepared it for occupation
and cultivation, and have paid to the state annually its revenues
in the way of taxes which accrued against the land, and there
is no reason in saying that simply because they purchased from
the state, that they did not get all of the state's title, and hence
this court has held in the decision above referred to that the
legislative design was not merely to grant what title the state
had to such lands as were rightfully subject to sale under the
decree above mentioned, but that the legislature knew that as to
a large portion of said lands the state was the true owner of
the same, and that it intended by said act to divest itself of
the true title, as well as the Liquidating Levee Board title; or,
in other words, to vest in the purchaser any and all title that
it had to the lands, no matter from what source derived.

WHITFIELD, C. J., delivered the opinion of the court.

The land in this case was granted to the state of Mississippi
by Act Congress July 4, 1836 (5 Stat., 116, ch. 355), and Act
Congress June 13, 1842 (5 Stat., 490, ch. 39), in lieu of six-

teenth section lands, for the use and benefit of schools in what is known as the "Chickasaw Cession." These lands have since been known as the "Chickasaw school lands." It is perfectly manifest that they were never subject to taxation; that there never existed any power anywhere to sell them for taxes, and hence all the tax titles set up in this record are absolutely null and void. These lands are held in trust by the state of Mississippi for the education of the children of the townships in which these sixteenth sections lie. They were never taxable, and hence any effort to subject them to taxation is void.

The act of 1888, "an act to quiet and settle the title to certain lands in the Yazoo delta which were sold by the commissioners of the chancery court of Hinds county," etc. (Laws 1888, p. 40, ch. 23), as a matter of course was never intended to embrace any other lands than the character of lands set out in the caption of that act, and had no relation whatever to lands like those in this record. The history of the act of 1888 is perfectly well known. It was intended, as it states, to quiet the title to certain lands in the Yazoo delta, which had been sold by the commissioners of the chancery court of Hinds county. The title to these lands had become involved in the greatest possible confusion by reason of numerous tax sales occurring at various times, and this confusion constituted so great a cloud upon the title to lands in that delta that this act, wisely or unwisely, was passed to quiet title to that specific character of lands. The legislature never dreamed of applying its provisions to any other lands than those named in the caption of the act, and hence the land in controversy was totally unaffected, of course, by its provisions. To give the act the opposite construction would make it manifestly unconstitutional.

*The decree is reversed, and the cause remanded, to be proceeded with in accordance with this opinion.*