CLARA V. CREEGAN ET AL. v. SAMUEL HYMAN ET AL.

[46 South. 952.]

1. CHANCERY PLEADING AND PRACTICE. *Amendment of bill. Dispensing with sworn answer.*

Where an unsworn bill in equity, not waiving an oath to the answer, was answered by defendant under oath, and the cause was set for final hearing, the time specifically allowed for taking testimony having expired and no testimony having been taken, it was error to allow an amendment to the bill making it waive an answer under oath.

2. SAME. *New Party complainant. Seasonable application.*

In a suit to cancel clouds on title to land, a motion by the complainant and a third party to amend the bill by making them joint complainants cannot be resisted by the defendants as coming too late because the case had been continued once, the bill of the original complainant answered and his deposition taken.

3. DECREES AND JUDGMENTS. *Res judicata. Essentials.*

Before a plea of *res judicata* can prevail four things must be shown: Identity in the thing sued for, identity in the cause of action, identity of persons and parties to the action and identity of the quality in the person for or against whom the claim is made.

4. SAME. *Decision on former appeal. Subsequent amendments.*

A decree overruling a demurrer to a bill of complaint, although affirmed by the supreme court, is not *res judicata* and binding on the defendants where, after the affirmance, the bill was amended and made to show that the original complainant's claim of title to the land in suit was made in error and the alleged real owner made a new party complainant.

5. TAXATION. *Tax sales. Quieting titles. Laws 1888, ch. 23, p. 40. Construction. Swamp and overflowed lands.*

A sale for taxes of lands not subject to taxation, like swamp and overflowed lands, was not validated by Laws 1888, ch. 23, p. 40, quieting titles to lands in the Yazoo Delta, sold by the commissioners of the chancery court of Hinds county in the case therein specified.

6. SAME. *Levee taxes. Rights of purchaser under the curative act.*

A person claiming under an auditor's deed for levee taxes, under Laws 1888, ch. 23, p. 40, must point out specifically some particu-

93 Miss.—31

lar sale under which he claims the state held, in order to invoke the presumptions conferred by the act.

7. SAME. *State lands. Purchased from state. When thereafter taxable.*

Lands purchased from the state between February 1st and October 1st are not liable for the taxes of that year.

8. RECEIVER'S SALE. *Commissioner's deed. Necessity of confirmation. Evidence.*

A party claiming land under the deed of a receiver or commissioner in chancery must show that the sale claimed to be evidenced by the deed was confirmed by the court which appointed the receiver and commissioners.

9. LEVEE TAXES. *Levee tax deeds. Previous decisions approved.*

*Vasser v. George,* 47 Miss., 713, holding under the act of 1867, that a tax collector's deed to a levee board treasurer is void if it were not filed for redemption, and that a tax deed from a sheriff to the liquidating levee commissioners is void if the proper statutory bonds had not been given; and *Gibbs v. McGuire,* 70 Miss., 646, 12 South., 829, holding that an unsealed deed executed before November 1, 1880, did not convey a legal title, *approved.*

FROM the chancery court of Sunflower county.

HON. PERCY BELL, Chancellor.

Hyman and another, appellees, were complainants in the court below; Mrs. Creegan and others, appellants, were defendants there. From a decree in complainants' favor defendants appealed to the supreme court. The facts are fully stated in the opinion of the court.

*McClurg, Gardner & Whillington,* for appellants.

After the answer had been filed, sworn to, and the cause set down for hearing, Hyman had no right to ask, and the court no authority to grant permission to destroy the effect of the answer as evidence. Mr. Fletcher says, in his splendid work on Equity and Equity Pleading, section 648, *et seq:* "Under a statute permitting the complainant to waive answer under oath, it has been held that he must waive an answer under oath to every part of the bill or to no part of it; and, after the defendant has put in an answer, the complainant cannot, by amend-

ment waiving answer under oath, get rid of the consequences of a denial under oath of the matters of the bill. If the bill requires an answer under oath, and after the coming in of a sworn answer, complainant dismisses his bill, such sworn answer, filed in the prior suit, will remain evidence, and the complainant can have no decree under his second bill, unless his sworn answer is overcome by other proof."

In support of this text, we also find that, in 1 Ency. of Pl. & Pr. notes on page 470, it is said "After a bill seeking a discovery has been answered, the complainant can not amend his bill so as to waive discovery, and thus get clear of the defendant's answer." *Allen v. Woodson,* 50 Ga. 53.

The court below erred in granting permission, at the May term, 1907, to the Sutherland-Innes Company, a Canada corporation, to be made a party complainant in this cause. It will be noticed that, after this cause had been continued at the December term, 1906, after Hyman had been permitted to amend his bill, by waiving answer under oath, appellants filed their interrogatories to Hyman, in accordance with Code 1906, § 1938, when Hyman, in his answers, disclosed the fact that he was not, as he charged in his bill "the true and legal owner of the land in controversy." His answers disclose the fact that he was only nominally interested, in this: That he was a stockholder of the Sutherland-Innes Company, a Canada corporation, and that he held the title from the Sutherland-Innes Company for the benefit of the stockholders of the corporation. In other words, that, instead of being "the true and legal owner" he was a mere trustee for the benefit of this alien corporation, which had doubtless put the title in his name to escape the penalty imposed by Code 1906, § 2768, and Code 1892, § 2439.

It was too late for the Sutherland-Innes Company to be admitted as a party complainant, and besides, to permit a non-resident, alien corporation to come into the courts of our state, as was done in this case, and invoke the aid of the courts to ac-

quire land, in violation of the positive prohibition of law, is against public policy.

The action of the court below, in granting complainants' relief, was based on the decision of this court in the case of *Means v. Haley,* 86 Miss. 559, 38 South. 506. Should this court reaffirm the decision in *Means v. Haley,* yet appellees are not entitled to recover because the testimony in this cause shows that the various tax sales under and through which appellees deraign their title were void.

The first deed introduced was a deed from Eli Waits, tax collector, to Field, levee treasurer. Objection was made to the introduction of this deed, as the deed itself showed that it had never been filed for redemption, which the statute required should be done, and the sale therefore was void.

The next deed offered by complainants was from Eli Waits to Field, levee treasurer, when the same objection was made, except in that case, the deed also showed, in addition to the want of filing for redemption, that there was no seal by the tax collector. The fact that the deed was unsealed invalidated it. *Gibbs v. McGuire,* 70 Miss. 646, 12 South. 829.

The next deed was a deed from J. E. Johnson, sheriff, to the liquidating levee commissioners. Objection was made to this deed, for the reason that a proper bond had not been executed, which the statute required.

Every tax sale, both to the state and to the levee board, was shown on the trial to be absolutely void, and the act of 1888 under the decision in *Dingey v. Paxton,* 60 Miss. 1038, cannot be invoked in this case.

After the introduction of the deed from Gwin and Hemingway, commissioners, to Gordon, to which objection was made, among other deeds introduced, was a deed from J. T. Stewart and J. M. McKee, special commissioners of the federal court, to Thomas Watson, and objection was made to this conveyance also, because there was no proof introduced, showing authority for Stewart and McKee, commissioners, to make this deed, nor

was there any proof showing a confirmation of the sale by them to Watson.

The facts in this case are somewhat different from those in *Means v. Haley;* and, while we do not think that it is absolutely necessary, in order to reverse the decision of the lower court and dismiss the bill, to overrule *Means v. Haley;* yet we think it right to be frank with the court, and say that the decision in *Means v. Haley,* in our opinion, should be overruled. The fact is, it occurs to us, that the decision in *Means v. Haley,* has been practically and in effect already overruled by two decisions of this court, rendered in the last year or two.

The first of these decisions to which we refer, which in effect overruled *Means v. Haley,* is *Howell v. Miller,* 88 Miss., 655, 42 South. 129. Judge CALHOON in rendering a decision in that case said: "The swamp and overflowed lands were never the subject of taxation and sale for non-payment. Not being subject to any taxes, any assessment and sale of them had no warrant in law and the purchaser acquired no right against the state, or the state's vendee, who bought with the warrant of the law for their special sale."

As the land in controversy is "swamp and overflowed land" and the proof shows, held by appellants under patents from the state, we contend that under this decision, not being subject to any tax before their purchase from the state by appellants, that, as the court holds "Any assessment and sale of them had no warrant in law, and the purchaser acquired no right against the state or the state's vendee. To hold in the face of this decision that appellees acquired title to the land in controversy, through the various void tax sales, under the decision in *Means v. Haley,* is to deprive, we think, the appellants, as the court holds in *Dingey v. Paxton,* of their property "without due process of law." In other words, we cannot see how the decision in *Means v. Haley* can stand and be invoked, as it is by appellees, in the face of the decision of this court in the case of *Howell v. Miller;* for the lands in controversy are of the same class, to-

wit: "Swamp and overflowed lands," as those in controversy in the *Howell-Miller* case.

And the second case which we think practically overruled *Means v. Haley* is *Edwards v. Butler,* 89 Miss. 179, 42 South. 381. This court held in that case that inasmuch as the lands embraced in that suit, were "Chickasaw School Lands" they were never subject to taxation, that there never existed any power anywhere to sell them for taxes; and hence, all the tax titles set up in the record were absolutely null and void.

*Johnson & Neill,* for appellees.

The evidence sustaining appellees' bill is wholly record evidence, and it is immaterial whether the answer is under oath or not.

Samuel Hyman holds the legal title to the land involved for the benefit of himself and other stockholders in the Sutherland-Innes Company, as their interest may appear on settlement of the affairs of the Sutherland-Innes Company. It would have been rather remarkable had the chancery court, upon learning that probably some interest in the land in controversy belonged to Sutherland-Innes Company declined to entertain the bill, and dismissed the proceedings.

In the case at bar appellees derive their title from a deed from W. W. Stone, auditor. This deed was made under the provisions of the second section of the Act of 1888, Acts of 1888, chapter 23, page 40. At the time of the execution of this deed the title of this land was in the state of Mississippi. The levee board never held title to it. The sales to the levee board, and by the levee board, passed no title whatever. It was, however, claimed by the levee board under sales by Eli Waits, tax collector in 1859, and by J. E. Johnson, sheriff in 1870. It would be useless consumption of time to enter into a discussion of the different steps in the execution of these deeds to show that the law was complied with in the sale of these lands. It is immaterial for the purposes of this case whether

the presumption that the officer did his duty is sufficient to warrant the conclusion that the deeds of Waits to the levee board were filed, or whether the recital in the attestation clause of the Waits levee tax deed that the instrument was executed under seal is sufficient evidence of sealing, these deeds affirmatively show that this land was claimed in good faith by the levee board, belonged to the class of lands to be sold by Gwin and Hemingway, and the class of lands to which the statute, Laws of 1888, chapter 23, page 40, applies.

"It was because of the existence of the very fact, well known to the legislature, that, as to a large portion of the lands conveyed by the commissioners in the *Gibbs-Green case,* it was impossible for the purchasers of said lands to establish the title of said liquidating levee board to the same, that rendered the act of 1888 necessary.　＊　＊　＊"

Appellees clearly deraign title from the Gibbs-Green decree. The land passed from the commissioners to Eugene C. Gordon, from Gordon to Byron H. Evers, from Evers by decree of the court to Watson, and from Watson to the Delta & Pine Land Company, and by mesne conveyance to complainants. It is immaterial whether proper decree and confirmation of sale to Watson in case of *Watson v. Evers* in the United States district court is shown or not, for Byron H. Evers, and the other parties to this suit conveyed the said land to the Delta & Pine Land Company, and this conveyance is in evidence.

The principles of the case before the court are settled in the opinion in the case of *Means v. Haley, ubi supra.* This opinion in this case up to this time has not only not been overruled, but has never been questioned or criticized.

The case of *Howell v. Miller,* 88 Miss. 652, 42 South. 129, did not involve a title under the auditor's deed under the Act of 1888.

In *Edwards v. Butler,* 89 Miss. 179, 42 South. 381, the statute was held not to apply to school lands, lands granted in lieu of sixteenth section lands. The opinion, which is a short one, does not mention *Means v. Haley.*

It is a fact in the history of this case not to be lost sight of that a demurrer was filed by appellants to appellees' bill, overruled by the chancery court, and an appeal from this decree prosecuted to this court. The decree of the lower court overruling the demurrer was affirmed and the case remanded for answer and further proceedings.

By the decree on this demurrer the law of this case was settled; appellees' right to the relief prayed for upon establishing the facts set out in the bill is *res judicata*, it cannot further be questioned in this suit. The decision of the supreme court that appellees are entitled to the land sued for upon introducing the title deeds as set out in the bill cannot now be reversed. The opinion in *Means v. Haley* was the law upon which the demurrer was overruled, and the opinion in *Means v. Haley* is the law of this case. The overruling of a general demurrer is an adjudication that the complainant is entitled to some relief; in the case at bar appellees are entitled to the relief prayed for or nothing.

We take it to be well settled that questions decided on appeal are *res judicata* on a subsequent appeal and throughout all subsequent stages of the action. *Donald v. Green*, 9 Smed. & M. 138.

Argued orally by *Eugene Johnson* and *D. M. Quinn*, for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

The facts in this case are as follows: Samuel Hyman, one of the appellees, a citizen of New Orleans, La., filed his bill of complaint against appellants some time in the fall of 1905, in the chancery court of Sunflower county, Miss., to cancel certain patents issued by the state of Mississippi to appellants to section 25, township 19, range 3 W., Sunflower county, for what is known as "swamp and overflowed lands," alleging that he was the real and true owner of said section. The bill was not

.sworn to and did not waive an answer under oath.   A demurrer was interposed and overruled, on the strength of *Means v. Haley,* 86 Miss. 57, 38 South. 506, when an appeal was prosecuted to the supreme court, and there affirmed, without any argument or brief by appellants.   An answer was then filed, denying the allegations of the bill in positive terms, and sworn to.   At the November term, 1906, of the chancery court, Hyman made a motion to amend his bill by adding the words, "answer under oath being hereby expressly waived," at the close of the first paragraph of the bill.   This motion was made after the cause, with answer sworn to, had been set down for hearing at that term of court by appellants.   The court overruled the objections of appellants, and permitted the amendment to be made, when appellants excepted, and the cause was continued until the May term, 1907, of the chancery court.   After the cause had been continued at the December term, 1906, the deposition of Hyman, the complainant, was taken on interrogatories filed in the clerk's office, directed to the complainant, Hyman, in accordance with section 1938 of the Code of 1906.   Hyman answered these interrogatories, and by his answer disclosed the fact that he was only a trustee; that the legal title to the land in controversy belonged to the Sutherland-Innes Company, a Canada corporation; that the title had been taken in his name, as a protection to the Canada corporation, for the benefit of the stockholders, of whom he was one.   At the May term, 1907, or the next term of the court, the Sutherland-Innes Company, a Canada corporation, filed its petition to be made a party complainant with Hyman, its stockholder.   This petition showed the Sutherland-Innes Company to be a corporation organized and operating under the laws of the province of Ontario in the Dominion of Canada.   Appellants objected to the granting of the prayer of the petition, and among other objections alleged that the petition showed the Sutherland-Innes Company to be a non-resident alien corporation, and therefore incapacitated and unable to hold lands in this state, under section 2768 of the

code of 1906, and claimed, further, that any title which said corporation might acquire or hold would, under said section, escheat to the state. The prayer of the petition was granted, and the Sutherland-Innes Company permitted to join with Hyman as a party complainant, when appellants excepted, as shown by order of record in this cause.

On the hearing the complainants deraigned their title by beginning with the tax sale to the levee treasurer of Sunflower county, in 1859, for the levee taxes of the year 1858, and further introduced a series of tax titles, state and levee, and finally through Gwin and Hemingway, *ex officio* liquidating levee commissioners, to Gordon, and from Gordon, through a series of conveyances, to the Delta & Pine Land Company, and a deed from the state of Mississippi to the Delta & Pine Land Company, under the "quieting act" of 1888, and then a series of conveyances to the Sutherland-Innes Company, and from the Sutherland-Innes Company to Samuel Hyman, complainant. After all the testimony for the complainants was introduced, appellants moved to exclude all of the testimony of complainants, because the testimony failed to show any title to the land in controversy, as the same had never been liable for tax sale, and as the title, if any, acquired by the Sutherland-Innes Company, had escheated to the state. This motion was overruled. Appellants then introduced, for their testimony, patents from the United States to the state of Mississippi to the land in controversy as "swamp and overflowed lands," and then patents from the state of Mississippi to appellants, and also the deposition of Samuel Hyman, which had been taken on interrogatories which had been filed under section 1938 of the Code of 1906. Appellants also introduced a certified copy of the bond of J. E. Johnson, levee tax collector of Sunflower county, showing that he had not given the bond required by law, and that any sale, in consequence, by him, on account of his failure to give the proper bond, was void. The chancellor found for the complain-

ants, and decreed accordingly.   From the decree of the chan-
cellor, granting the prayer of relief for complainants, appellants.
appealed to this court.

*First.*   It was error in the court below to permit Hyman to-
amend his bill, after the answer had been sworn to and filed,.
and the cause set down for hearing at the December term, 1906,
by adding the words, "answer under oath being hereby ex-
pressly waived," at the close of the first paragraph of the prayer·
of the bill.   The answer having been sworn to and filed, and
the cause set down for hearing, it was then too late for such an-
amendment to have been permitted.   In Fletcher's Equity &
Equity Pleading, section 648, it is said:   "Under a statute·
permitting the complainant to waive answer under oath, it has·
been held that he must waive an answer under oath to every
part of the bill or to no part of it; and, after the defendant has·
put in an answer, the complainant cannot, by amendment waiv-
ing answer under oath, get rid of the consequences of a denial·
under oath of the matters of the bill.   If the bill requires an.
answer under oath, and after the coming in of a sworn answer.
the complainant dismisses his bill, such sworn answer, filed in·
the prior suit, will remain evidence, and the complainant can
have no decree under his second bill, unless his sworn answer is·
overcome by other proof."   And so, in 1 Ency. of Pl. & Prac.,.
in the notes on page 470, it is said:   "After a bill seeking a
discovery has been answered, the complainant cannot amend his·
bill so as to waive discovery, and thus get clear of the defend-
ant's answer"—citing *Allen v. Woodson,* 50 Ga. 53.   See, also,
*Burras v. Looker,* 4 Paige (N. Y.) 227.   No testimony what-
ever had been taken in this case by Hyman when this cause was
set down for hearing.   Under these circumstances, the answer·
was evidence under our statute, and entitled to full weight as·
such, and could not be destroyed at that time as·evidence by the·
amendment indicated.

*Second.*   We do not think it was error in the court below to-

allow the Sutherland-Innes Company to be made a party complainant. We do not think the motion came too late from the complainant to be made a party.

*Third.* We come now to the chief ground upon which appellees rely, which is that this case was necessarily decided for them under the case of *Means v. Haley,* 86 Miss. 559, 38 South. 506. Appellees say that there was a demurrer filed to the bill ·originally in the court below, and an appeal taken to this court, and that decree, overruling the demurrer in the court below, affirmed, on the authority of *Means v. Haley,* and hence that that decision of this court, affirming the action of the court below in ·overruling said demurrer, is the law of this case, and that the question is thus *res adjudicata.* This is an entire misconception. There is no room for the doctrine of *res adjudicata* in this case. The original bill in this case was filed by one Samuel Hyman, in which he alleged himself to be the true and legal owner of the land in controversy. The demurrer, which was interposed at the December term, 1905, of the court below, was a demurrer to that particular bill so filed by Hyman, and it was on an appeal from a decree overruling that particular demurrer to that particular bill, in which Hyman alone was the complainant, that the decree of the court below was affirmed, and affirmed, too it may be said in passing, without argument or brief on the part of the present appellants. After all that had happened, it·appeared from interrogatories thereafter propounded to Hyman that his allegation was untrue—that he was not the legal owner of the land, and that he had no interest whatever in the land, either legal or equitable, but that the Sutherland-Innes Company claimed this land, as hereinbefore set out, and that he (Hyman) was a mere dummy or figurehead, acting for them, doubtless because of their knowledge of the penalty provided by section 2768 of the Code of 1906; and it was after all this testimony had been taken that the Sutherland-Innes Company, for the first time, at the May term, 1907, became a party complainant to this bill. It therefore appears that the demurrer which

was overruled was a demurrer to a bill filed by Hyman, trustee, alone. Before the plea of *res adjudicata* can prevail, four things must be shown: "(1) Identity in the thing sued for; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality in the person for or against whom the claim is made." 24 Am. & Eng. Ency. of Law, p. 778. The last three essentials are wanting in this case. This disposes of the contention of learned counsel that the decree of this court, affirming the decree of the court below overruling the demurrer, constitutes *res adjudicata* of this present cause of action.

But learned counsel for appellees also misconceive the case of *Means v. Haley,* 86 Miss. 557, 38 South. 506. Nothing whatever was decided, so far as the decision is concerned, in *Means v. Haley,* except that where there had been sales of lands to the levee board, which lands were the subject of sale for taxes, no irregularities or defects in such sales, save constitutional defects, should avail after the passage of the act of 1888 (Laws 1888, p. 40. c. 23) to defeat the title to lands so held under such sales to said levee boards. This is shown by a careful reading of the opinion at page 562 of 86 Miss., and page 507 of 38 South. giving the history of the act. It is said there that "the legislature was not only aware of the inability of many purchasers to make proof of title in the liquidating levee board, but it recognized that many of the sales by which said board acquired its claim of title were voidable, if not absolutely void, and remedied that by enacting that all such sales (except as to certain occupants and claimants under the abatement act) theretofore made were 'valid, notwithstanding any defect or irregularity in the same, and shall not be impeached for any cause, except that the tax for which said land was sold had been paid.' " There could be no tax to be paid of any kind whatever on lands not the subject of any taxation at all. It may be conceded, and is doubtless true, that the language of the opinion, especially on page 563 of 86 Miss., and page 507 of 38 South., is entirely too

broad, and may very well have misled the learned counsel for
appellees. Nothing, we repeat, was meant to be decided by that
case save only that sales to the levee boards of lands subject to
taxation, where no constitutional defect was involved, were made
valid by the act of 1888 against any assailment, except by show-
ing that the taxes due on said lands had been paid.

But the lands in this case were swamp and overflowed lands,
vested in the state of Mississippi, and, of course, never were the
subject of taxation. No taxes of any kind whatever were ever
due upon the lands, in this case, and this case is controlled
squarely by the two decisions of this court, recently announced
and now reaffirmed, of *Howell v. Miller,* 88 Miss. 655, 42 South.
129, and *Edwards v. Butler,* 89 Miss. 179, 42 South. 381. In
the former of these cases, CALHOON, J., speaking for the court,
said, in a case involving just this very class of lands, swamp
and overflowed lands, at page 667 of 88 Miss., and page 130 of
42 South.: "The swamp and overflowed lands were never the
subject of taxation and sale for nonpayment. Not being sub-
ject to any tax, any assessment and sale of them had no war-
rant in law, and the purchaser acquired no right against the
state or the state's vendee, who bought with the warrant of the
law for their especial sale." In *Edwards v. Butler,* 89 Miss.
179, 42 South 381, Chickasaw school lands were involved,
granted to the state of Mississippi by the national government.
We there said: "It is perfectly manifest that they were never
subject to taxation, that there never existed any power any-
where to sell them for taxes, and hence all the tax titles set up
in this record are absolutely null and void. These lands
are held in trust by the state of Mississippi for the education
of the children of the townships in which these sixteenth
sections lie. They were never taxable, and hence any effort to
subject them to taxation is void. The act of 1888, 'An act to
quiet and settle the title to certain lands in the Yazoo Delta
which were sold by the commissioners of the chancery court of
Hinds county,' etc. (Laws 1888, p. 40, c. 23), as a matter of

course was never intended to embrace any other lands than the character of lands set out in the caption of that act, and had no relation whatever to lands like those in this record. The history of the act of 1888 is perfectly well known. It was intended, as it states, to quiet the title to certain lands in the Yazoo Delta, which had been sold by the commissioners of the chancery court of Hinds county. The title to these lands had become involved in the greatest possible confusion by reason of numerous tax sales occurring at various times, and this confusion constituted so great a cloud upon the title to lands in that delta that this act, wisely or unwisely, was passed to quiet title to that specific character of lands. The legislature never dreamed of applying its provisions to any other lands than those named in the caption of the act, and hence the land in controversy was totally unaffected, of course, by its provisions. To give the act the opposite construction would make it manifestly unconstitutional."

It must be too obvious for any further comment that if the act of 1888 were construed as appellees insist it should be construed, and as they say it was construed in *Means v. Haley,* two things are perfectly plain: That such act would be unconstitutional, as said in *Edwards v. Butler;* and, second, that the case of *Means v. Haley* has already been overruled by both *Howell v. Miller* and *Edwards v. Bulter, supra.* The title of appellants to the land in controversy is perfect, and the contention set up by the appellees cannot be maintained. *Means v. Haley* had no such purpose, and, if it had, it, as said, has been overruled already by the two cases named. This cuts up the appellees' case by the roots; but there are several other things which may be said to show that, upon other grounds, the result would be the same.

*Fourth.* The appellees say in the third paragraph of their brief that they claim that they derive their title from W. W. Stone, auditor, and that this deed is made under the provisions of the second section of the act of 1888. They further say that at the time of the execution of this deed the title to this land

was in the state, and they further say, remarkably enough, in view of their other contentions, that the levee board never held title to this land at all, and that those sales passed no title whatever. If the appellees claimed under this deed, it was their duty to point out specifically some particular sale under which they claimed before they could invoke the presumption conferred by the act of 1888. In the case of *National Bank of the Republic v. Louisville, etc., R. Co.,* 72 Miss. 447, 17 South. 7, COOPER, J., speaking for the court, pointed out this carefully and with great precision. In concluding that opinion he said: "But when we read the whole act, and consider its purpose, as shown by the preamble and by the body of the act, it is evident that the deed is made *prima facie* evidence in aid of a particular claim of title made by the state under some designated and particular tax sale. The purpose of the deed authorized to be made by the auditor is to pass some particular title claimed by the state, and not to make an instrument in form a conveyance, but in truth carrying no estate. The statute did not contemplate a conveyance from the state, claiming nothing in the land, to the end that, as against the original owner, a mere presumption should be transformed to his adversary. One claiming under the deed of the auditor must point out the title which the state claimed to own and to transfer to him. He cannot, by a mere averment that a sale was made in one year or another, and the production of the auditor's deed, put his adversary to prove that in fact the asserted sale was never made. To give this effect to the deed would be, in effect to hold that a conclusive, instead of a *prima facie,* case is made by its production, and manifestly this was never contemplated." We think this sound beyond all controversy, and reaffirm it. If, then, it logically follows, the appellees stand and claim under the alleged deed of the auditor, they must specifically point out some particular sale in aid of which they invoke the presumption given by the act of 1888, and this they have wholly failed to do. Wherefore the auditor's deed is of no avail to them.

*Fifth.* The appellees claim again, amongst their many conflicting claims, that their title is deraigned under the Gibbs-Green decree from the commissioners to Eugene Gordon, and from Gordon to Evers, and from Evers, by decree of the court, to Watson, and from Watson to the Delta & Pine Land Company; and they say that, in view of the fact that Evers conveyed the land to the Delta & Pine Land Company, it was immaterial whether proper decree and confirmation of sale to Watson, in the case of *Watson v. Evers,* in the United States District Court, was shown or not. But this claim must fail for the reasons now to be pointed out: It is shown, by paragraph 9 of the bill, that this land was sold to the state on the 8th day of March, 1883, for the taxes of 1882. The bill then shows, in the next paragraph, that on the 13th of March, 1885, the state conveyed this land to Jas. D. Stewart, receiver. The next paragraph, No. 11, shows that this land, which had been sold on the 8th of March, 1883, to the state of Mississippi, while it was the property of Evers, was on the 13th day of March, 1885, conveyed by the state to Stewart, receiver, and yet, on the first Monday of March, 1886, this same section, after having been previously sold by the state on the 13th of March, 1885, was pretendedly sold again for the taxes of 1885, and struck off to the state. Now, it is manifest that whatever title Evers had was, on the 8th of March, 1883, sold to the state, and the title then acquired by the state was, in turn, conveyed by the state on the 13th of March, 1885, to Jas. D. Stewart, receiver, so that, when the sale was made on the first Monday of March, 1886, for the taxes of 1885, that sale was absolutely void under the case of *Wildberger v. Shaw,* 84 Miss. 442, 36 South. 539, in which we held that lands purchased from the state after February 1st and before October 1st are not liable for taxation for the year in which the purchase is made, and therefore, since this land had been sold by the state to Stewart, receiver, on the 13th of March, 1885, it could not legally be sold on the first Monday of March, 1886, for the taxes of 1885; and yet this is the only

title the state laid any claim to at the time when the auditor executed the deed in question to the appellees under the quieting act of 1888, and, this particular sale being absolutely void, as the bill itself shows, there was no title whatever left for the state to convey under that act.

In order to meet this predicament, in which appellees have placed themselves, by their own evidence, appellees say that if all this was true, and if it was further true that there was no proper confirmation of the sale from Stewart, receiver, and McKee, commissioner, they yet acquired the title of Evers by reason of the conveyance made to Evers, as shown by paragraph 14 of their bill, in which deed Evers and others on November 13, 1886, made a quitclaim deed to the Delta & Pine Land Company of this and other land. In other words, appellees would claim, according to paragraph 14 of their bill, under this quitclaim deed from Evers, made on the 13th of November, 1886, when they have themselves shown, in paragraphs 8, 9, 10, and 11 of their bill, that the land had previously been sold twice for taxes to the state—once on March 8, 1883, for the taxes of 1882, and that title had been sold by the state to Stewart, receiver, and that afterwards, on the first Monday of March, 1886, the land was again sold for taxes to the state without authority, since no taxes were due for the year 1885, the land having been previously sold on March 13, 1885, to Stewart, receiver. Even if the sale in 1883 was valid, manifestly, Stewart had that title, and Evers had no title to convey on the 11th of March, 1886, after the land had been sold for taxes in 1883 to the state, and conveyed in 1885 by the state to Stewart, receiver, so that in a wholly different view of this case it is clear that independently of the quieting act of 1888, and independently of *Means v. Haley,* if it had meant, as it does not, what the learned counsel for appellees contend, appellees had no way by which to acquire this title, except through a conveyance from Stewart, receiver, to some one through whom appellees claim. Paragraph 12 of said bill shows that Jas. D. Stewart, receiver, and James McKee, special commissioner, conveyed section 25 to Watson on the

11th of March, 1886; but this deed was objected to by the appellants for the want of any authority whatever shown for Stewart, receiver, and McKee, special commissioner, in the United States District Court for the Southern District of Mississippi, to convey this property, and that was a good objection, and should have been sustained. How, then, could counsel for the appellees logically have contended that it was immaterial whether there was such proper decree and confirmation of sale to Watson, in the case of *Watson v. Evers,* shown by the record or not? So far as this record discloses, there was no proof whatever of any authority on the part of this receiver, Stewart, and this special commissioner, McKee, to make this deed, and there was no proof that the act of the receiver and commissioner in making the deed had ever been confirmed by the federal district court. The objection, as stated, should have been sustained, and, being sustained, there was a fatal hiatus in the chain of title in this view on the part of the appellees, without any reference whatever to the act of 1888 or *Means v. Haley,* even as wrongly understood by the learned counsel for the appellees.

*Sixth.* We conclude by referring merely, since what we have said disposes of the case, to the fact, made clear by the record, that every alleged sale to the levee board in this case was absolutely null and void. For example, the first deed from Eli Waits, tax collector, to Field, levee treasurer, was void, under *Vassar v. George,* 47 Miss. 730, because the deed was never filed for redemption; and the next deed from Eli Waits to Field, levee treasurer, was void for the same objection, and also for the further reason that it had no seal, as required at that time. See *Gibbs v. McGuire,* 70 Miss. 646, 12 South. 829. The next deed, from J. E. Johnson, sheriff, to the liquidating levee commissioners was void under *Vassar v. George,* 47 Miss. 729, because no proper bonds, as required by the statute, had been made. But this opinion is already too protracted. We merely referred to the fact that all these sales were null and void in passing.

The decree of the court below is reversed and the bill dismissed.    *Reversed and dismissed.*